522 P.2d 25

**STATE of Arizona, Appellee,**

v.

**Joe MINIEFIELD, Appellant.**

**No. 2763.**

Supreme Court of Arizona,
In Banc.

May 15, 1974.

**600**

Gary K. Nelson, Atty. Gen., Frank T. Galati and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

David A. Groseclose, Phoenix, for appellant.

HOLOHAN, Justice.

This is an appeal from a jury verdict and judgment of guilt to the charges of murder in the first degree, arson in the first degree, aggravated battery and two counts of assault with a deadly weapon. The defendant was sentenced to life imprisonment for murder, 19 to 20 years for arson, 60 to 80 years on each of the assaults and 4 to 5 years for the battery with the terms to run concurrently.

Four questions are presented on appeal. They are as follows: (1) Was it error to charge the defendant with felony-murder by arson? (2) Were the remarks of the county attorney reversible error? (3) Was an expert witness's testimony based partially on police reports error? (4) Do convictions and sentences for both arson and felony-murder by arson amount to double punishment for the same act in violation of A.R.S. § 13–1641?

On August 30, 1972, at approximately 5:30 p. m., the defendant, Joe Miniefield, met a Harry Williams and the two decided to drink together. They began drinking at the defendant's apartment and a short time later they proceeded to several bars in the Phoenix area. About 8:00 p. m. the defendant and Williams met the defendant's brother and a Terry Hogue at Bob's Inn. All four men drank and smoked marijuana for the next two hours.

At about 10:00 p. m. the defendant met Chester Carr in front of Star Liquor on East Washington Street in Phoenix. The

two men did not know each other except by sight. Miniefield told Carr that Mrs. Carr had told him, "You are going to do something to me." The defendant suddenly struck Carr in the face and a fight ensued with Carr getting the best of it. Bystanders pulled the men apart, but they agreed to meet and continue the fight in a vacant lot near the liquor store. Carr was waiting for the defendant in the lot a few minutes later and when Miniefield approached he was carrying a .38 caliber pistol in his belt.

Carr ran from the scene to his house on 16th Street and Jefferson. The defendant followed Carr and shot at him several times while he was in the house. As the defendant began to knock down the front door, Carr exited through the rear, finding refuge in a vacant house behind his own home. At this time, Carr's wife, 23-month-old son and nine-month-old daughter were left in the house. The defendant left and then returned a short time later and Mrs. Carr tried to talk to him whereupon the defendant struck her. He then threw a bottle filled with some sort of flammable substance onto the porch of the house and started a fire. Wendell Transen, a boarder at the Carr house, was able to put the fire out. Miniefield left again and Mr. Carr returned to the house.

Minutes later, Carr saw the defendant again approach his house, this time carrying a shotgun. Several shots were fired at the house and Carr again exited the house to hide in the vacant building. Next the defendant threw another bottle of flammable liquid into the house and a much larger fire started. This time the fire could not be put under control. By 11:30 p. m. the nine-month-old baby girl, Debra, now badly burned, had been removed from the house and taken to the hospital. Just after midnight she was pronounced dead.

The next day the defendant was arrested by City of Phoenix police officers. He denied remembering any of the events of the previous evening and at trial interposed a defense of insanity.

The first issue presented by the defense is that it was fundamental error to charge the defendant with felony-murder by arson where the arson is an ingredient of the homicide itself. The defendant states that the arson was coincidentally committed as one of several attempts to murder Mr. Carr and thus the arson itself is not so distinct as to be an ingredient of an independent offense. In substance, the defense argues that the arson was merely the use of fire to attempt to kill the victim, and the same rule should apply to this means (fire) as to any other means such as a gun, knife, club, etc.

The defense further argues that ordinarily a killing done in the heat of passion is manslaughter, but in this case such a lesser degree of homicide was precluded by the charge of felony-murder.

The defense is really arguing that the State may not use one act to support multiple convictions of crime. State v. Mays, 108 Ariz. 172, 494 P.2d 368 (1972); State v. Mendoza, 107 Ariz. 51, 481 P.2d 844 (1971). The case relied upon by the defense, State v. Fisher, 120 Kan. 226, 243 P. 291 (1926), illustrates the point. In the *Fisher* case the defendant fired his rifle at a car and in the process shot and killed one of the occupants. The State charged felony-murder because the defendant had committed an assault with a deadly weapon, a felony, and the Kansas statute provided that a killing in the perpetration of a felony was first degree murder. The Kansas Supreme Court held that the act of shooting could not be used as the basis of the felony as an element of murder in the first degree and also as some other form of homicide; the act was merged into one offense, not two.

The Kansas decision is in harmony with our holding in State v. Mendoza, *supra*, holding that rape accomplished under threat of use of a deadly weapon constituted one offense, first degree rape—the use of the deadly weapon supplying the element of force for first degree rape.

The case at issue presents a different problem. We are dealing with separate offenses whose elements are different and except for the felony-murder statute have no relationship to each other.

A.R.S. § 13–452 provides:

"A murder which is * * * committed in the perpetration of, * * * arson * * * is murder of the first degree."

Arson is defined by A.R.S. § 13–231. It states,

"A person who wilfully and maliciously sets fire to or burns or causes to be burned, * * * a dwelling house, * * * is guilty of arson in the first degree . . ."

■ Arizona criminal law is based solely on statute and not on the common law. A.R.S. § 13–452 provides that when a person commits arson and that arson results in a death it is first degree murder. Under our felony-murder statute premeditation and deliberation are not necessary elements. State v. Akins, 94 Ariz. 263, 383 P.2d 180 (1963). The statute does not draw a distinction between a person who intends to kill another by fire and one who only intends to burn down a dwelling house and accidentally kills one of the occupants. The legislature has deemed such crimes as murder by poison, murder by torture, murder by lying in wait and murder committed in the perpetration of certain other felonies so heinous and committed with such a wanton disregard for human life that there is no need to prove the elements usually necessary for a conviction for first degree murder. This is the purpose and the theory behind the felony-murder rule. The offenses are separate. State v. Clayton, 109 Ariz. 587, 514 P.2d 720 (1973). There was no error in charging or convicting the defendant of felony-murder.

■ Next, the defendant urges it was reversible error for the county attorney to call defense witnesses "liars." There is considerable latitude allowed to counsel in argument. This includes drawing reasonable inferences from the evidence. State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970); State v. Jaramillo, 110 Ariz. 481, 520 P.2d 1105 (filed April 10, 1974). The evidence disclosed that at least one defense witness was shown to have made contradictory statements and other defense witnesses had their testimony concerning the drunkenness of the defendant rebutted by prosecution witnesses. Although we do not approve of the language of the prosecutor, we do not find it so offensive, inflammatory or prejudicial as to require reversal. Sullivan v. State, 47 Ariz. 224, 55 P.2d 312 (1936).

■ As his third contention on appeal the defendant states that it was error to allow the State's psychiatrist to give expert testimony based in part on police reports that contained hearsay statements. What defendant fails to distinguish is the testimony given by the psychiatrist at trial in answer to the hypothetical question propounded by the prosecution and the testimony elicited by defense counsel on cross-examination concerning the report submitted by the doctor to the trial court pursuant to A.R.S. § 13–1621F on the defendant's mental condition to stand trial. In the latter instance the psychiatrist used police reports, a letter from the deputy county attorney and the interview with the defendant. In cross-examination the psychiatrist acknowledged that his report to the court had been based on the various sources mentioned. The testimony of the psychiatrist on direct was in response to the hypothetical question propounded by the county attorney which was based on previously admitted evidence and to which question the defense did not object. The testimony of the psychiatrist based on the evidence which had been admitted in the case was clearly admissible. The fact that in an earlier matter his report to the trial court had been based on hearsay does not affect the admissibility of his testimony in response to the hypothetical question based on the evidence at trial.

State v. Gevrez, 61 Ariz. 296, 148 P.2d 829 (1944), the chief case relied upon by the defendant, is readily distinguishable in that the psychiatrist in *Gevrez* based his expert opinion upon newspaper accounts and other hearsay information and not upon evidence previously before the court. In this case the opinion expressed by the doctor was based on the evidence already admitted in the case.

Finally, the defendant maintains that convictions and sentences for both first degree murder and arson amount to double punishment in violation of A.R.S. § 13–1641.

It is clear from the evidence that there were two separate fires set by the defendant on the night in question, but the indictment charged a single count of arson, and the instructions to the jury did not attempt to limit the jury to consideration of one of the particular instances of arson. The instructions were general and merely defined the crime of arson. While it is true that the first fire (the one extinguished by the boarder) was clearly a separate and distinct event from the murder caused by the second fire, the argument by the defense that the defendant may not be punished for murder and the arson which caused the homicide is not correct. Assuming that the jury found the defendant guilty of arson by reason of the second fire and murder caused by such fire, the defendant may receive a separate sentence from each offense.

We dealt with this same issue last year in Clayton, *supra.* Instead of arson, *Clayton* dealt with a homicide committed in the perpetration of a burglary. Burglary like arson is one of the specific felonies under A.R.S. § 13–452 which may result in a conviction of first degree murder. The Court noted that the fact that the burglary supplied the premeditation necessary for first degree murder does not make it part of the same offense. In explanation of the distinction we stated:

"In the instant case the statute defines the crime of felony murder or murder committed in the course of a burglary as a separate crime in addition to the crime of burglary. They are separate offenses —one committed against the person and the other committed against the property of another. Where the offenses are so closely intertwined, as for example assault with a deadly weapon which results in a homicide, the statute may apply. Where the offenses are separate the statute does not apply." 109 Ariz. at 600, 514 P.2d at 733.

The same standards apply in the case of arson and felony-murder by arson.

Judgment and sentences affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.