636 P.2d 1209

**STATE of Arizona,**
**Appellee-Cross-Appellant,**

v.

**Dennis Wayne RUMSEY,**
**Appellant-Cross-Appellee.**

No. 5042.

Supreme Court of Arizona,
In Banc.

Nov. 4, 1981.

Rehearing Denied Dec. 8, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee-cross-appellant.

Ross P. Lee, Maricopa County Public Defender by Charles R. Krull, Deputy Public Defender, Phoenix, for appellant-cross-appellee.

CAMERON, Justice.

Defendant, Dennis Wayne Rumsey, was convicted by a jury on 6 June 1980 of first degree murder in violation of A.R.S. § 13–1105, and armed robbery in violation of A.R.S. § 13–1904. He was adjudged guilty and sentenced to life imprisonment without possibility of parole for 25 years for the first degree murder conviction and 21 years for the armed robbery conviction. A.R.S. §§ 13–701, 13–702, and 13–604. The terms of the sentences were to run consecutively. A.R.S. § 13–708. Defendant now appeals the consecutive nature of his sentences. We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4035.

We must answer the following questions on appeal:

1. Does the imposition of consecutive sentences in this instance violate Arizona's multiple punishment statute?
2. Does the imposition of consecutive sentences violate the double jeopardy clause of the United States Constitution?
3. Did the trial court err in imposing life imprisonment rather than the death sentence for the murder conviction?

The facts necessary for a determination of these issues are as follows. On 16 October 1979, a badly decomposed body of a white male was discovered on the desert alongside Interstate 10, approximately 20 miles outside of Phoenix, Arizona. The corpse carried no identification, and a subsequent autopsy revealed that the victim died of two gunshot wounds to the chest. Through fingerprint analysis and dental examination, the victim was later identified as one George Koslosky.

On or about 5 November 1979, the Phoenix Police Department was notified by the Indiana State Police that a girl by the name of Kimberly Holmes had come forward as a witness to a murder in the State of Arizona. Through an interview with Kimberly Holmes, the police arrested the defendant in Las Vegas, Nevada, at his parental home and he was charged with the murder and robbery of George Koslosky.

At trial, Kimberly Holmes testified that in October of 1979 she and defendant were hitchhiking from Indiana to the home of the defendant's parents in Las Vegas. In New Mexico or Texas, they were picked up by the victim, George Koslosky. When they reached Phoenix, the defendant and the victim went into a store to buy some beer. When the defendant returned, he told Kim that the victim had over $300 in his wallet and that he was going to rob him. Elsewhere in Phoenix, they stopped at a restaurant where the victim bought food for them. The defendant again told Kim of his plans to rob Koslosky. When they left Phoenix, defendant was driving the vehicle and the victim was sleeping in the back.

After driving for approximately 45 minutes, defendant pulled over to the side of the road and told Kim, "I'm going to do it now." Defendant then woke the victim and ordered him at gunpoint to empty his pockets and to get into the trunk. The victim refused, saying he would "smother" in the trunk. The defendant fired one warning shot and repeated his demands. When the victim refused, the defendant shot the victim twice and he fell to the ground. The defendant then dragged the victim off the road and Kim testified that she then heard a third shot. Prior to leaving the scene in the victim's car, defendant threw some money at Kim and told her to count it. They then proceeded to Riverside, California, and then on to Las Vegas. Shortly thereafter, Kim returned to Indiana where she notified the authorities of the incident.

William Rumsey, defendant's brother, testified that in October, 1979, his brother came back to Las Vegas. At that time, defendant told him that he had shot a man in Arizona and did not know if he had killed him or not. While they were speaking, defendant showed his brother a wallet and a watch that were later identified as having belonged to the victim, George Koslosky.

When testifying in his own behalf, defendant denied even discussing the robbery of George Koslosky with Kimberly Holmes. Defendant testified that the victim was driving the car when they left Phoenix and that it was he who went into the back seat where he passed out from drinking and using narcotics. When he awoke, it was Kim who was driving the car and she was shaking and crying. Defendant said that at that time, Kim admitted killing the victim because he had tried something with her. Defendant admitted that upon his return to Las Vegas, he told his brother that it was he who shot a man in Arizona, but that this was done to cover-up for Kimberly Holmes and to protect her from being arrested.

## MULTIPLE PUNISHMENT

Defendant contends that the sentence imposed by the trial court is in violation of

Arizona's multiple punishment statute which reads as follows:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. * * * " A.R.S. § 13–116.

Under a previous statute with slightly different language, we have held that a defendant convicted for murder under the felony-murder rule may receive two sentences when the underlying felony and the homicide were two separate and distinct offenses. *State v. Lujan*, 124 Ariz. 365, 604 P.2d 629 (1979); *State v. Miniefield*, 110 Ariz. 599, 522 P.2d 25 (1974).

█ In *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971), we adopted the "identical elements" test for determining whether the proscription of Arizona's multiple punishment statute applies to a particular case. Under that test, the court must eliminate the evidence supporting the elements of one charge and determine whether the remaining evidence supports the elements of the other charge.

The elements of first degree murder are: (1) knowingly; (2) causing the death of another person; (3) with premeditation. A.R.S. § 13–1105. Armed robbery is: (1) the taking of any property; (2) of another; (3) from his person or immediate presence; (4) against his will; (5) by using or threatening to use force; (6) with the intent either to coerce surrender of the property or to prevent resistance to such person taking or retaining property; (7) where the perpetrator is armed with a deadly weapon or uses or threatens to use a deadly weapon or dangerous instrumentality. A.R.S. §§ 13–1902 and 13–1904.

A.R.S. § 13–1902 reads:

"A person commits robbery if *in the course of taking* any property of another * * * such person threatens or uses force * * *." (emphasis added)

In a case wherein the defendant shot and killed a taxicab driver by a bullet in the back of the head after which he took the victim's night's receipts we stated in setting aside the consecutive sentences:

"It is apparent that the elimination of the evidence supporting the elements of first degree murder does not leave sufficient evidence to support the armed robbery charge. Although the first five elements of robbery are supported by the remaining facts, the sixth element 'by means of force or fear' is not supported. This evidence is necessary to support the first two elements of the murder charge: the unlawful killing of a human being. Under the peculiar facts of our instant case, the taxicab driver was shot in the head from behind, apparently with no knowledge of what was about to take place. This shooting was the only force available to support the subsequent acts which might otherwise be characterized as robbery. * * * Accordingly, the robbery conviction and sentence are set aside." *State v. Ferguson*, 119 Ariz. 55, 61, 579 P.2d 559, 565 (1978).

█ We do not find that *State v. Ferguson*, supra, is applicable. In the instant case, the defendant demanded the victim's wallet and threatened him with a gun prior to shooting him. Even though the victim's wallet was not taken until after the victim was shot and presumably dead, the acts which constituted the robbery were separate and apart from the acts which constituted the murder. The fatal shooting constituted first degree murder independent of the armed robbery. Under the facts of this case, we hold that the intervening crime of murder does not preclude a conviction of armed robbery as well as murder, and the trial court was correct in imposing consecutive sentences for armed robbery and murder.

## DOUBLE JEOPARDY

Defendant also contends that his consecutive sentences violate the double jeopardy clause of the Fifth Amendment to the United States Constitution.

█ Defendant relies on the United States Supreme Court case of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432,

63 L.Ed.2d 715 (1980). *Whalen* was decided on the basis of a District of Columbia statute, and the United States Supreme Court, interpreting that statute, concluded that Congress did not intend to allow the crimes of rape and murder in the course of rape to be punishable by consecutive sentences. The court in *Whalen* made it clear that Congress could have provided for a different sentencing scheme. Arizona has such a scheme and specifically permits the imposition of consecutive sentences. A.R.S. § 13–708. We do not believe *Whalen* is applicable. We find no double jeopardy violation.

## FAILURE TO IMPOSE THE DEATH PENALTY

Before sentencing, the trial court made the findings required by the statute, A.R.S. § 13–703, as to mitigating and aggravating factors. The trial court specifically found:

"5. The defendant did not commit the offense as consideration for the receipt or in expectation of the receipt of anything of pecuniary value.

"In this regard, the Court does not agree with the State's interpretation of A.R.S. 13–703(F)(5) and *State v. Madsen* filed March 26, 1980. The Court believes that when A.R.S. 13–703(F)(4) and (5) are read together that they are intended to apply to a contract-type killing situation and not to a robbery, burglary, etc."

The court further stated it found no aggravating or mitigating circumstances to exist and then sentenced the defendant to life imprisonment rather than death.

The State cross-appealed pursuant to A.R.S. § 13–4032(4) which states:

"An appeal may be taken by the state from:

\*    \*    \*    \*    \*    \*

"4. A ruling on a question of law adverse to the state when the defendant was convicted and appeals from the judgment."

and contends that the trial court erred in interpreting A.R.S. § 13–703(F)(5) to mean that for murder for pecuniary gain to be an aggravating circumstance, the facts must suggest a "contract-type" murder or murder "for hire" situation. The trial court based its conclusion on language appearing in *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046, cert. denied 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980). In *Madsen,* the trial court held that the receipt of proceeds from an insurance policy on the victim was an aggravating circumstance pursuant to the monetary gain portion of the statute. We disagreed stating:

"The mere existence of the policy and the receipt of the proceeds does not establish that the killing was done in expectation of the profit from the insurance policy, nor does defendant's after-the-fact statement regarding the collecting of insurance money indicate that he committed the murder for the purpose of receiving the insurance proceeds. A.R.S. § 13–454(E)(5) requires that the murder must have been committed for the consideration of financial gain. To comply with the statute, the receipt of the money must be a cause of the murder, not a result of the murder. We do not believe that there was sufficient evidence from which it could be found that there was financial motivation on defendant's part for the murder. From an independent examination of the record as required by *Richmond, supra,* we do not believe this aggravating circumstance has been shown." 125 Ariz. at 353, 609 P.2d at 1053.

In the instant case, the hope of financial gain was a cause of the murder, not merely a result.

■ Any uncertainty regarding the interpretation of *Madsen, supra,* however, was dispelled, three months after defendant was sentenced, when we held that A.R.S. § 13–703(F)(5) was not limited to "hired gun" situations and that a trial court could properly find that theft committed in the course of a murder is an aggravating circumstance pursuant to subsection (F)(5) of A.R.S. § 13–703. *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, cert. denied 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The trial court, therefore, erred in holding as a

matter of law that it could not find as an aggravating circumstance that the murder was for monetary gain.

■ Because the trial judge misinterpreted the statute and our opinion in *Madsen,* supra, the sentence of life imprisonment previously imposed will have to be set aside and the matter remanded for redetermination of aggravating and mitigating circumstances and resentencing. The sentence for armed robbery is not affected by this opinion.

Judgment of guilt and sentence for armed robbery affirmed. The judgment of guilt for first degree murder is affirmed, the sentence is vacated, and the matter is remanded for resentencing pursuant to this opinion.

HOLOHAN, V. C. J., and HAYS, J., concur.

GORDON, Justice, specially concurring.

I must specially concur in light of my dissent in *State v. Clark,* 126 Ariz. 428, 616 P.2d 888 (1980).

STRUCKMEYER, Chief Justice, dissenting.

I dissent to that portion of this decision which sets aside the sentence of life imprisonment previously imposed and remands for resentencing.

It is my opinion that where, as here, the punishment of life imprisonment has been imposed for murder, permitting a possible resentence of death if the State cross-appeals will have such a chilling effect as to cause a defendant with a life sentence to forego a meritorious appeal. I agree with Justice Stewart, who in *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), quoted from *Worcester v. Comm. of Internal Revenue,* 370 F.2d 713, 718 (1st Cir. 1966):

> "[I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice."

The judgment of conviction and sentence should be affirmed.