708 P.2d 453

**STATE of Arizona, Appellee,**

v.

**James Arthur VAUGHN, Appellant.**

No. 6409.

Supreme Court of Arizona,
In Banc.

Oct. 2, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Diane Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Kemper & Henze by James Hamilton Kemper, Phoenix, for appellant.

CAMERON, Justice.

Defendant, James Arthur Vaughn, was convicted of first degree murder, A.R.S. § 13–1105, first degree burglary, A.R.S. § 13–1508, and armed robbery, A.R.S. § 13–1904. Pursuant to A.R.S. § 13–604, defendant was sentenced to life imprisonment on the first degree murder conviction, to twenty-one years for the armed robbery conviction, and to fifteen years for the first degree burglary conviction. The sentences were ordered to be served consecutively. (§ 13–708 and Rule 26.13 Rules of Criminal Procedure, 17 A.R.S.). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4035.

Defendant raises two issues on appeal.

I. Did the trial court improperly deny defendant's motion for mistrial based on the claim that the prosecutor commented on defendant's post-arrest silence?

II. Do the consecutive sentences for robbery and murder constitute double punishment in violation of A.R.S. § 13–116?

The facts necessary for a determination of this matter on appeal follow. During the evening of 29 December 1982, defendant and three other individuals, known as ET, Pee Wee, and Poncho, decided to commit a crime. They drove around Phoenix until they came upon a Union 76 gas sta-

tion. They proceeded to burglarize the gas station, during which time the attendant was robbed and murdered. Soon thereafter, these four men were arrested. Early in the investigation and at trial, ET and Pee Wee stated that Poncho and defendant had committed the actual burglary and robbery while ET and Pee Wee remained in the car. ET and Pee Wee also claimed that defendant had told them upon returning from the gas station to the car that he had taken the attendant into a back room, forced him to kneel and beg for his life, and then shot him twice in the head. The reason given by defendant for doing this was to leave no witnesses.

Before being questioned, defendant received the *Miranda* warnings, and said he understood them. During questioning, he told officers various versions of what had occurred. First, defendant stated he had been at a bar all during the night in question. Then, he claimed he had gone with the three other men, but he, Pee Wee, and Poncho had remained in the car while ET committed the crimes. Finally, he said Pee Wee and Poncho may have gotten out of the car, but he remained in the car.

At the crime scene, a palm print was discovered on the safe, and it was matched to Poncho. A shoe print was also found on top of a car behind the station. The shoe print was matched to a pair of Trax tennis shoes owned by defendant. During questioning by officers, defendant was asked whether he was wearing the Trax shoes the night of the crime, and he said that he probably was wearing them. From jury verdicts, judgments and sentences, defendant appeals.

## I

### PROSECUTORIAL COMMENT ON POST-ARREST SILENCE

At trial, defendant took the stand and testified in his own behalf. Defendant testified that Pee Wee and Poncho had committed the burglary and robbery and that Pee Wee had killed the attendant. Defendant testified that he and ET had remained near the car. This testimony was inconsistent with his prior statements made to police.

On cross examination, the prosecutor asked defendant the following questions:

Q. But when you were asked about it when you were first taken into custody it was your recollection that those were the shoes that you were wearing when you were out there at the Union 76 station, is that right?

A. I can't remember me telling him that ... I think that's a lie right there ... I don't remember me telling him I had them tennis shoes on. I think the answer I gave's I probably had them tennis shoes on, I probably didn't. Raymond [Poncho] wore my tennis shoes, too.

Q. And when did you tell Detective House that Raymond wore your tennis shoes?

A. I don't think I told him that Raymond wore my tennis shoes.

Q. And when did that—when did that flash into your mind?... Is that after you found out that that had been matched to the hood of that Toyota behind the station, Mr. Vaughn?

A. Raymond stayed with me. He wore my tennis shoes. I let him wear them. He wore my clothes, my tennis shoes, my dress shoes, you know ... Raymond wore my shoes all the time. Ever since he's been down here he been staying with me he's going to wear my tennis shoes.

Q. When you found out that your shoe had been matched up at the scene you got a hold of Detective House and told him about Raymond, is that right?

Before defendant answered, defense counsel objected to the question. Defense counsel moved for mistrial, which the trial judge denied; however, the trial judge did sustain the objection to the question, so the prosecutor's question was never answered.

█ Prosecutorial use of a defendant's post-arrest silence for the purpose of impeachment has been held to be fundamen-

tal error. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973). However, where defendant has not remained silent and has made statements which are inconsistent with defendant's trial testimony, the defendant may be questioned about his prior inconsistent statements. "When a defendant makes a statement at trial which is inconsistent with an earlier statement his credibility is clearly in question." *State v. Anderson,* 110 Ariz at 241, 517 P.2d at 511. Here, defendant told three different versions of the events to the police, and while testifying, he told a fourth version. Since defendant did not invoke his right to silence, he was not impeached by it. We find no error.

## II

## DOUBLE PUNISHMENT

The defendant was found guilty of first degree felony-murder, first degree burglary and armed robbery and sentenced to consecutive terms of imprisonment.

A.R.S. § 13–708 and Rule 26.13 Rules of Criminal Procedure, 17 A.R.S., provide that sentences shall run concurrently unless the court expressly directs otherwise. The decision to impose consecutive sentences rests with the discretion of the trial judge. A.R.S. § 13–708; *U.S. v. Miller,* 650 F.2d 169, 170 (9th Cir.1980); *State v. Girdler,* 138 Ariz. 482, 489, 675 P.2d 1301, 1308 (1983). In the instant case, the trial judge expressly directed that the sentences were to be served consecutively, and set forth on the record his reasons for imposing consecutive sentences.

The trial judge's discretion to impose consecutive sentences is limited by A.R.S. § 13–116 which provides as follows:

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentences under either one bars a prosecution for the same act or omission under any other, to

the extent the Constitution of the United States or of this state require.

The defendant contends that the consecutive sentences for murder and robbery under the facts in this case violate A.R.S. § 13–116. We do not agree.

■ The test to determine whether A.R.S. § 13–116 has been violated is the identical elements test adopted in *State v. Tinghitella,* 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971). The identical elements test is applied by eliminating the evidence supporting the elements of one charge and then determining whether the remaining evidence supports the elements of the other charge.

In *State v. Ferguson,* 119 Ariz. 55, 579 P.2d 559 (1978), this Court held that the elimination of evidence supporting the murder conviction did not leave sufficient evidence to support the armed robbery charge. In *Ferguson,* "[T]he taxicab driver was shot in the head from behind, apparently with no knowledge of what was about to take place. This shooting was the only force available to support the subsequent acts which might otherwise be characterized as robbery." *Id.* at 61, 579 P.2d at 565.

In *State v. Rumsey,* 130 Ariz. 427, 636 P.2d 1209 (1981), we held that A.R.S. § 13–116 did not apply, even though the charge was felony murder and the defendant was sentenced for the underlying robbery as well as first degree murder. In *Rumsey,* the defendant had stated that he was going to kill the victim, a hitchhiker. Defendant woke up the victim who was sleeping in the backseat of the car, ordered him at gunpoint to empty his pockets and get into the car's trunk. "The victim refused, saying he would 'smother' in the trunk. The defendant fired one warning shot and repeated his demands. When the victim refused, the defendant shot the victim twice and he fell to the ground. The defendant then dragged the victim off the road and Kim testified that she then heard a third shot." *State v. Rumsey, supra,* 130 Ariz. at 429, 636 P.2d at 1209.

In upholding the two convictions and sentences we stated,

"In the instant case, the defendant demanded the victim's wallet and threatened him with a gun prior to shooting him. Even though the victim's wallet was not taken until after the victim was shot and presumably dead, the acts which constituted the robbery were separate and apart from the acts which constituted the murder. The fatal shooting constituted first degree murder independent of the armed robbery. Under the facts of this case, we hold that the intervening crime of murder does not preclude a conviction of armed robbery as well as murder, and the trial court was correct in imposing consecutive sentences for armed robbery and murder."

*State v. Rumsey, supra,* 130 Ariz. at 430, 636 P.2d 1209.

Recently, this court addressed a case whose facts fell between *Rumsey* and *Ferguson.* In *State v. Woods,* 141 Ariz. 446, 687 P.2d 1201 (1984), evidence indicated that defendant put a gun to the victim's ear and shot him, and that defendant and an accomplice then stole the victim's car. 141 Ariz. at 448–449, 687 P.2d at 1203–04 (1984). As we stated in *Woods,*

"Counsel agreed at oral argument that the distinction to be drawn between *Ferguson* and *Rumsey* is to be made on the victim's awareness of the crime. Since there was only one use of force, and that must be assigned to support the murder element, under *Ferguson* and *Rumsey* there is no evidence to support the required robbery element of the use or threat of force unless the victim was aware of the threat during the robbery. Correctly perceiving that this was the precise issue, before imposing consecutive sentences the trial judge made an express finding that the victim had been aware, if only for a brief moment, of the gun in his ear and thus aware of the threat of force."

*State v. Woods, supra* 141 Ariz. at 458–459, 687 P.2d 1201.

The common thread between *Rumsey, Woods* and *Ferguson* is whether evidence of the killing was the only evidence to support the element of force necessary to armed robbery. We believe the instant case is more akin to *Rumsey* and *Woods* than *Ferguson.* Here, as in *Rumsey* and *Woods,* there was evidence other than the killing to support the robbery element of force. Defendant forced the victim to kneel and beg for his life. The victim offered defendant the gas station keys presumably to appease defendant. There is also evidence suggesting defendant took money from the victim's wallet because the wallet was found lying open and empty near the victim's body. Additionally, defendant stated to ET and Pee Wee that he had killed the attendant so as to leave no witnesses, not so as to commit robbery. The facts support first degree felony-murder and when these facts are eliminated, the first degree robbery still stands. A.R.S. § 13–116 is not violated by the consecutive sentences for first degree murder and armed robbery.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. McGann,* 132 Ariz. 296, 645 P.2d 811 (1982), and we find none. Defendant's convictions and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.