IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant/Cross-Appellee*,

*v.*

JEFFREY RICHARD MARTINSON, *Appellee/Cross-Appellant*.

No. 1 CA-CR 13-0895
FILED 9-22-2016

Appeal from the Superior Court in Maricopa County
Nos. CR 2004-124662-001 SE
CR 2012-007335-001
The Honorable Sally Schneider Duncan, Judge

**VACATED AND REMANDED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Gerald R. Grant
*Counsel for Appellant/Cross-Appellee*

Michael Terribile, Attorney at Law, Phoenix
By Michael Terribile
*Co-Counsel for Appellee/Cross-Appellant*

Law Office of Treasure VanDreumel, PLC, Phoenix
By Treasure VanDreumel
*Co-Counsel for Appellee/Cross-Appellant*

Arizona Voice for Crime Victims, Scottsdale
By Colleen Clase
*Co-Counsel for Crime Victim, K.E.*

University of Utah Appellate Clinic, S.J. Quinney College of Law,
Salt Lake City, Utah
By Paul G. Cassell
*Co-Counsel/Pro Hac Vice for Crime Victim, K.E.*

---

**OPINION**

Judge Margaret H. Downie delivered the opinion of the Court, in which Acting Presiding Judge John C. Gemmill (Retired) and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

¶1        The State of Arizona appeals an order dismissing with prejudice first degree felony murder and child abuse charges against Jeffrey Richard Martinson on the basis of prosecutorial misconduct. Martinson cross-appeals from the denial of his motions for judgment of acquittal.

¶2        Because the State was erroneously precluded from suggesting at trial that Martinson intentionally killed his son, the fundamental underpinnings for a finding of prosecutorial misconduct sufficient to warrant dismissal with prejudice are not present. We therefore vacate the dismissal with prejudice order and remand to the superior court with instructions to grant the State's motion to dismiss the pending indictment without prejudice. Treating Martinson's cross-appeal as a cross-issue, we deny his requested relief.

**FACTS AND PROCEDURAL HISTORY**

¶3        Martinson and K.E. are the parents of J.E.M., who was born in July 1999. After their relationship ended in 2000, K.E. obtained legal custody of J.E.M., as well as an order of protection against Martinson. Martinson was awarded visitation with J.E.M.

¶4        In August 2004, J.E.M. was with Martinson for a scheduled weekend visit. When Martinson failed to return the child on Sunday evening or return telephone calls, K.E. contacted the police. Police officers entered Martinson's apartment to conduct a welfare check and found him in the master bedroom, unresponsive, with cuts on his wrists. J.E.M. was discovered dead in another bedroom, with a frothy substance coming from

2

his nose.  Toxicology tests revealed carisoprodol (a muscle relaxant) and a related metabolite in J.E.M.'s blood.  The medical examiner concluded J.E.M.'s death was caused by acute carisoprodol toxicity.

¶5          In September 2004, a grand jury returned an indictment (the "2004 Indictment"), charging Martinson with one count of first degree felony murder and one count of child abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 13–3623(A)(1) (A person commits child abuse if, acting knowingly or intentionally, the person, "[u]nder circumstances likely to produce death or serious physical injury . . . causes a child . . . to suffer physical injury.").  Child abuse was the predicate felony for the felony murder count.  *See* A.R.S. § 13–1105(A)(2) (a person commits felony murder if he commits child abuse in violation of A.R.S. § 13–3623(A)(1) and "in the course of and in furtherance of the offense" causes death).  The State sought the death penalty.

¶6          Trial began in July 2011.  After the jury was sworn, but before the State's opening statement, defense counsel moved to preclude evidence that Martinson intentionally killed J.E.M.  The superior court granted the motion, reasoning that under *State v. Styers*, 177 Ariz. 104 (1993), alleging child abuse as the predicate felony for felony murder barred the State from arguing that Martinson had intentionally killed J.E.M.

¶7          The jury returned guilty verdicts as to both felony murder and child abuse.  Jurors could not reach a unanimous decision during the penalty phase, though, resulting in a mistrial for that phase.  Martinson moved for a judgment of acquittal based on insufficiency of the evidence or, in the alternative, for a new trial as to his guilt, asserting juror misconduct and trial error.  Martinson also alleged prosecutorial misconduct, claiming prosecutors repeatedly violated the court's order precluding evidence of an intent to kill J.E.M.

¶8          In March 2012, the superior court denied Martinson's motion for judgment of acquittal but granted his motion for new trial based on juror misconduct and error in admitting expert testimony.  In ordering the new trial, the court specifically rejected Martinson's claims of prosecutorial misconduct.

¶9          In June 2012, the State obtained a new indictment against Martinson in Maricopa County Case No. CR 2012–007335–001 (the "2012 Indictment").  In addition to alleging felony murder, the 2012 Indictment charged Martinson with premeditated murder.  After obtaining the 2012 Indictment, the State moved to dismiss the 2004 Indictment without

prejudice.[1] Martinson objected and moved to dismiss the 2012 Indictment instead. The superior court granted Martinson's motion to dismiss the 2012 Indictment and denied the State's motion to dismiss the 2004 Indictment.

¶10 The State filed a special action petition challenging the denial of its motion to dismiss the 2004 Indictment. *State ex rel. Montgomery v. Duncan*, 1 CA–SA 12–0217, 2012 WL 5867379 (Ariz. App. Nov. 20, 2012) (mem. decision). This Court accepted jurisdiction and granted relief, concluding the State had established good cause for dismissing the 2004 Indictment without prejudice. *Id*. at *5, ¶ 20. We did not, however, "reach the issue of whether good cause would have been lacking if the trial court had determined the State attempted to dismiss the 2004 Indictment in bad faith or to avoid the speedy trial provisions of Rule 8." *Id*. at ¶ 21. We ruled the superior court could "amend its findings or hold further hearings" if it intended to rely on bad faith. *Id*.

¶11 The superior court subsequently ordered additional briefing and held a hearing to consider whether the State acted in bad faith by seeking to dismiss the 2004 Indictment. The court ultimately ruled that the State had engaged in prosecutorial misconduct and bad faith by, among other things, "deliberately attempt[ing] to secure a conviction based on an uncharged theory" and by "persistently violat[ing] this Court's *Styers* ruling." Based on its findings of prosecutorial misconduct, the court dismissed the 2004 Indictment with prejudice.

¶12 The State timely appealed, and Martinson timely cross-appealed.[2]

## DISCUSSION

### I. Dismissal with Prejudice

¶13 We review the superior court's dismissal order for an abuse of discretion. *See State v. Moody*, 208 Ariz. 424, 448, ¶ 75 (2004) (appellate

---

[1] At the same time, the State successfully moved to dismiss the notice of intent to seek the death penalty.

[2] K.E. filed a "crime victim's notice of appearance" in this Court, as well as a "Crime Victim's Brief Pursuant to A.R.S. § 13-4437(A)," arguing the dismissal with prejudice order violated her constitutional rights as a victim. Martinson moved to strike K.E.'s filings. Given our determination that the dismissal should have been without prejudice, we need not resolve K.E.'s standing or her constitutional claims, and we deny Martinson's motion to strike K.E.'s filings.

court reviews rulings on motions to dismiss criminal charges for abuse of discretion). A court abuses its discretion if it commits an error of law in reaching its decision. *State v. Cowles*, 207 Ariz. 8, 9, ¶ 3 (App. 2004). We defer to the superior court's factual findings unless clearly erroneous but are not bound by its legal conclusions. *State v. O'Dell*, 202 Ariz. 453, 456–57, ¶ 8 (App. 2002).

**¶14** The bad faith and prosecutorial misconduct findings that caused the superior court to dismiss the charges with prejudice are, at their core, premised on the determination that prosecutors ignored the holding in *Styers* and the corresponding court order in this case that they not pursue an intent to kill theory at trial.[3]

**¶15** The superior court ruled that because the State had charged "felony murder --with child abuse as a predicate -- Arizona law necessarily precluded the State from offering evidence of intent to kill and/or argu[ment] that [Martinson] intended to kill" J.E.M. The court based this conclusion on what it viewed as the central holding of *Styers*: because a person cannot intentionally kill a child without also intentionally causing physical injury, the crime of child abuse necessarily merges into felony murder if based on an intent to kill. The court reasoned, though, that *Styers* permits child abuse to serve as a predicate felony if it is based on an intent to *injure* a child; under these circumstances, it concluded, child abuse constitutes a separate and independent offense from felony murder, and the two offenses do not merge. Based on this analytic framework, the court precluded the State from presenting evidence or argument that Martinson intended to kill J.E.M.

### A. Merger

**¶16** Applying *Styers* to the facts of this case is not a straightforward proposition.

---

[3] The superior court found additional instances of prosecutorial misconduct. As we discuss *infra*, though, the primary impetus for its dismissal with prejudice order was the purported violation of *Styers* and the *Styers*-based ruling. Most of the post-trial conduct the court categorized as misconduct stems from its conclusion that prosecutors viewed the "rulings about the uncharged intentional-murder theory as a roadblock" and "used every opportunity to challenge the Court's *Styers* ruling and present evidence of intent to kill."

¶17         Styers shot a child in the back of the head and was convicted of first degree murder, conspiracy to commit first degree murder, child abuse, and kidnapping.  177 Ariz. at 108–09.  The fatal gunshot wounds were the only evidence of child abuse.  *Id*. at 110.  The jury received separate verdict forms for premeditated and felony murder.  It returned guilty verdicts on both theories.  *Id*. at n.1.

¶18         On appeal, Styers challenged the sufficiency of the evidence for the child abuse conviction, arguing he could not be convicted of both murder and child abuse.  The Arizona Supreme Court agreed, holding that the "separate child abuse conviction cannot stand on the facts of this case." *Id*. at 110.  The court drew an analogy to aggravated assault-murder, where the convictions merge into one offense, reasoning: "If a defendant cannot be convicted for an intentional aggravated assault that necessarily occurs when there is a premeditated murder, it logically follows that he also cannot be convicted for an intentional child abuse that necessarily occurs when there is a premeditated murder of a child victim."  *Id*.  The court emphasized, though, that its decision was limited to premeditated murder and child abuse convictions.  Indeed, anticipating charges like those against Martinson, the court added that its decision did not apply to child abuse as a predicate felony for felony murder:

> We emphasize that nothing in this opinion should be read as suggesting that child abuse may not still be a predicate felony for felony murder.  If a person intentionally *injures* a child, he is guilty of child abuse under A.R.S. § 13-3623(B)(1);[4] if that injury results in the death of the child it becomes a first degree *felony* murder pursuant to A.R.S. § 13-1105(A)(2).  *See State v. Lopez*, 174 Ariz. 131, 141–43, 847 P.2d 1078, 1088–90 (1992) . . . .  Although felony murder is first degree murder, it is arrived at differently than premeditated murder.  The first degree murder statute, A.R.S. § 13-1105(A)(1), not the child abuse statute, applies when a person intentionally *kills* a child victim.

*Id*. at 110–11 (footnote added).

¶19         The supreme court underscored the limited holding of *Styers* in the companion case of *State v. Milke*, 177 Ariz. 118, 123 (1993), stating:

---

4         This statutory section was later re-designated as A.R.S. § 13-3623(A)(1).  *See* 2000 Ariz. Sess. Laws, Ch. 50, § 4 (2nd Reg. Sess.).

In the companion case involving co-defendant Styers, we have today held that, under the facts of this case, a separate child abuse offense under A.R.S. § 13-3623(B)(1) did not occur when [the victim] was murdered *with premeditation*. . . . We emphasize, as we did in *Styers*, that our holding has no effect on the use of child abuse as a predicate offense for felony murder.

¶20        The holding in *Styers* is limited to premeditated murder and child abuse convictions and does not address or govern the use of child abuse as a predicate felony for felony murder. In contrast, our supreme court squarely addressed whether child abuse merges into felony murder in *State v. Lopez*, 174 Ariz. 131 (1992). The defendant in *Lopez* was convicted of felony murder based on the predicate felony of child abuse. *Id.* at 136. Relying on *State v. Essman*, 98 Ariz. 228 (1965), Lopez challenged the conviction, arguing that child abuse, like assault, cannot serve as a predicate felony because it merges into felony murder. *Id.* at 141; *see Essman*, 98 Ariz. at 235 ("[A]cts of assault merge into the resultant homicide, and may not be deemed a separate and independent offense which could support a conviction for felony murder."). The supreme court rejected that argument, holding that "if the legislature explicitly states that a particular felony is a predicate felony for felony-murder, no 'merger' occurs."[5] *Lopez*, 174 Ariz. at 142; *see also State v. Miniefield*, 110 Ariz. 599, 602 (1974) (arson does not merge into felony murder because it is designated a predicate felony under felony murder statute).

¶21        Neither *Styers* nor other precedent stands for the proposition that a predicate felony committed with the intent to kill merges into felony murder. Indeed, the defendant in *Styers* was charged with felony murder predicated on child abuse and felony murder predicated on kidnapping. *Styers*, 177 Ariz. at 110, 112. Styers argued that kidnapping could not serve as a predicate felony because it was committed pursuant to a plan to kill and therefore merged into the felony murder charge. *Id.* at 112. The court disagreed, holding that, "[a]lthough the jury findings in this case clearly demonstrate that the kidnapping was [committed] pursuant to a plan to

---

[5]        In distinguishing *Essman*, *Lopez* noted that when *Essman* was decided, assault was not included as a predicate felony under the felony murder statute. *Id.* at 141. Assault is not listed as a predicate felony under the current felony murder statute, whereas child abuse is. A.R.S. § 13-1105(A)(2).

kill, that does not mean that only one crime was committed." *Id*. As a result, "the merger doctrine would not apply," and "Defendant was appropriately convicted of both kidnapping and murder." *Id*.[6]

¶22 The court reached a similar conclusion in *Miniefield*, where the defendant threw a bottle of flammable liquid into a house, causing a fire that killed a nine-month-old child. 110 Ariz. at 601. The defendant was charged with felony murder based on arson as the predicate felony. *Id*. He argued arson could not serve as a predicate felony because it was, like a knife or a gun, "merely the use of fire to attempt to kill the victim," and "not so distinct as to be an ingredient of an independent offense." *Id*. Rejecting this contention, the court held that because arson is identified as a predicate felony under the felony murder statute, when "arson results in a death it is first degree murder." *Id*. at 602. The court further held that under the felony murder statute, there is no "distinction between a person who intends to kill another by fire" and a person who commits arson by only intending "to burn down a dwelling house and accidentally kills one of the occupants." *Id*.

¶23 More recently, in *State v. Moore*, 222 Ariz. 1, 13, ¶ 57 (2009), the defendant was convicted of felony murder predicated on burglary. The burglary charge was based on entry into the victim's home with the intent to commit murder. *Id.* at 12, ¶ 50. Defendant challenged his conviction, arguing burglary based on an intent to kill merges into felony murder. The court disagreed, holding that under Arizona's felony murder statute, a predicate felony is not required to be separate or independent from homicide. *Id*. at 14, ¶ 62; *see also State v. Hardy*, 230 Ariz. 281, 287, ¶¶ 21–26 (2012) (felony murder may be predicated on burglary and kidnapping undertaken with intent to murder the victim).

¶24 The superior court's order dismissing the charges with prejudice was also based, in part, on the fact that felony murder only requires proof of the specific mental state for the predicate felony, and proof of an intent to kill J.E.M. was not required. *See State v. McLoughlin*, 139 Ariz. 481, 485–86 (1984); A.R.S. § 13-1105(A)(2). By definition, though, proof of a *more* culpable mental state proves a *less* culpable mental state. *See* A.R.S. § 13-202(C). Indeed, given that crimes are designated predicate felonies because they create a grave risk of death, and felony murder requires a close causal connection between the predicate felony and the resulting death, it

---

[6] The court did not address Styers' same argument regarding child abuse as a predicate felony because it had "reversed the child abuse conviction on other grounds." *Id*. at 117 n.3.

8

logically follows that much of the evidence used to prove a predicate felony may also prove an intent to kill. *See Miniefield*, 110 Ariz. at 602 (Offenses are designated predicate felonies because they are "committed with such a wanton disregard for human life that there is no need to prove the elements usually necessary for a conviction for first degree murder."); A.R.S. § 13-1105(A)(2) (under felony murder statute, death must occur "in the course of and in furtherance of" a predicate felony).

**¶25** Although the predicate felony of child abuse required the State to prove only that Martinson intentionally injured J.E.M., much of the evidence establishing an intent to injure also demonstrated an intent to kill. *Cf. State v. DePiano*, 187 Ariz. 41, 43, 45 (App. 1995) (sufficient evidence of intent to commit child abuse where prosecution presented theory defendant wanted to kill herself and her children as part of a "suicide gesture"), *vacated in part on other grounds*, *State v. DePiano*, 187 Ariz. 27 (1996). Evidence proving an intent to kill necessarily proves an intent to injure, as it is impossible to kill a person without causing physical injury. *See State v. Barrett*, 132 Ariz. 88, 90 (1982) ("It cannot be seriously argued that death does not involve serious physical injury as defined by [statute]."), *overruled on other grounds by State v. Burge*, 167 Ariz. 25 (1990).

**¶26** For the foregoing reasons, the State was entitled to pursue a theory that Martinson committed the predicate felony of child abuse with an intent to kill J.E.M., not merely injure him. The superior court's contrary ruling was therefore legally erroneous.

### B. Prosecutorial Misconduct

**¶27** Federal and state double jeopardy protections prohibit multiple prosecutions for the same offense. *State v. Minnitt*, 203 Ariz. 431, 437, ¶ 27 (2002). Additionally, "[a]s part of the protection against multiple prosecutions, the clause protects a defendant's valued right to have his or her trial completed by the tribunal first assigned." *Id*. These constitutional protections, though, "are not absolute." *Id.* at ¶ 28. In determining whether double jeopardy principles bar retrial, we consider whether there was "[i]ntentional and pervasive misconduct on the part of the prosecution to the extent that the trial [was] structurally impaired" and whether the misconduct "is so egregious that it raises concerns over the integrity and fundamental fairness of the trial itself." *Id*. at 438, ¶¶ 29-30. We review *de novo* whether double jeopardy principles bar retrial of a defendant. *Moody*, 208 Ariz. at 437, ¶ 18.

¶28        Although as a matter of substantive law, the State was entitled to pursue an intent to kill theory, as counsel for the State conceded at argument before this Court, attorneys are ethically bound to abide by court rulings — even those with which they disagree.  Thus, to the extent prosecutors violated the superior court's *Styers*-based orders, such conduct was improper.[7]   In discussing the appropriate sanction to impose, the superior court stated:

> [T]he Prosecutors engaged in pervasive misconduct.  First, the objective evidence demonstrates the Prosecutors' intentional violation of the Court's *Styers* rulings was prejudicial because jurors returned a verdict based on an intent-to-kill theory. Second, the Court's *Styers* rulings did not result in the preclusion of otherwise admissible evidence.  Rather, the rulings were an attempt to confine the State to trying the case it had charged.  Third, the Prosecutors repeatedly violated the Defendant's due process right to be tried only on the specific charges of which he had been accused. . . .  Fourth, the 2012 Indictment was not the product of the Prosecutors' reaction to an adverse court ruling; but, in reality, the new indictment represents their undaunted efforts to convict the Defendant based on an unsupportable legal theory.

¶29        Assuming, without deciding, that prosecutors knowingly pursued an intent to kill theory at trial in contravention of the court's order, as a matter of law, Martinson cannot establish the requisite prejudice arising from that conduct that would bar retrial on double jeopardy grounds.  *See State v. Aguilar*, 217 Ariz. 235, 238–39, ¶ 11 (App. 2007) (rejecting claim that prosecutorial misconduct barred retrial on double jeopardy grounds and holding there must be "intentional conduct which the prosecutor knows to be improper *and prejudicial*") (emphasis added); *see also State v. Towery*, 186 Ariz. 168, 185 (1996) (where there has been misconduct but no error, or the error is harmless, the proper remedy is generally not reversal but affirmance followed by appropriate sanctions against the offending actor).   Because the law permitted the State to prove

---

[7]     The record does not suggest that the State was placed on notice during trial that it was violating a court order, yet continued doing so unabated.  Martinson made several motions for mistrial on the basis that prosecutors were violating the court's order by offering evidence and argument suggesting an intent to kill.  Each time, the court denied the mistrial request.  We leave to the superior court's discretion the question of whether lesser sanctions are appropriate on remand.

the felony murder charge with evidence that Martinson intended to kill J.E.M., to the extent such evidence and argument was presented at trial, Martinson suffered no cognizable prejudice.

¶30 For the foregoing reasons, we vacate the order dismissing the 2004 Indictment with prejudice and remand with instructions to grant the State's motion to dismiss that indictment without prejudice.

## II. Cross-Appeal

¶31 The sole issue Martinson raises on cross-appeal is whether the superior court erred by denying his Rule 20 motions for judgment of acquittal. According to Martinson, even if we set aside the order of dismissal with prejudice, double jeopardy principles bar further prosecution due to insufficiency of the evidence. *See Burks v. United States*, 437 U.S. 1, 11 (1978).

¶32 We lack appellate jurisdiction to consider Martinson's argument as a cross-appeal. A criminal defendant may appeal only from: (1) a final judgment of conviction; (2) an order denying a new trial; (3) an order made after judgment affecting the substantial rights of the party; or (4) an illegal or excessive sentence. A.R.S. § 13-4033(A); *see also Campbell v. Arnold*, 121 Ariz. 370, 371 (1979) (court of appeals' jurisdiction is dictated by statute). Martinson was successful in having all charges against him dismissed with prejudice. Consequently, his appeal does not fall within a statutorily recognized category over which this Court has appellate jurisdiction.

¶33 However, Martinson's challenges offer an alternative basis for affirming the superior court's order of dismissal with prejudice. *See State v. Cañez*, 202 Ariz. 133, ¶ 51 (2002) (appellate court will uphold trial court's ruling if legally correct for any reason), *abrogated on other grounds by State v. Valenzuela*, 239 Ariz. 299 (2016). His contention that the court erred by denying the Rule 20 motions does not necessitate a cross-appeal with an independent showing of appellate jurisdiction; it is simply a cross-issue that Martinson may raise in response to the State's appeal. *See Town of Miami v. City of Globe*, 195 Ariz. 176, 177 n.1, ¶ 1 (App. 1998) ("When a successful party seeks only to uphold the judgment for reasons supported by the record, but different from those relied upon by the trial court, its arguments may not be raised by a cross-appeal, as it is not an 'aggrieved' party, but are more properly designated as cross-issues."). Accordingly, we consider the merits of Martinson's argument.

¶34    We review claims of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Our assessment is limited to whether substantial evidence supports the verdicts. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a) (requiring trial court to enter judgment of acquittal "if there is no substantial evidence to warrant a conviction"). Substantial evidence is evidence that, viewed in the light most favorable to sustaining the verdict, would permit a reasonable person to find a defendant guilty beyond a reasonable doubt. *State v. Roseberry*, 210 Ariz. 360, 368–69, ¶ 45 (2005). "Evidence may be direct or circumstantial, but if reasonable minds can differ on inferences to be drawn therefrom, the case must be submitted to the jury." *State v. Landrigan*, 176 Ariz. 1, 4 (1993).

¶35    The State presented substantial evidence from which jurors could conclude, beyond a reasonable doubt, that Martinson was guilty of child abuse and felony murder.

¶36    J.E.M. died while in Martinson's sole care. When K.E. left the boy with Martinson on Friday evening, he was in good health. Post-mortem toxicology tests revealed carisoprodol and a related metabolite in J.E.M.'s blood. The medical examiner who performed J.E.M.'s autopsy testified that the cause of death was acute carisoprodol toxicity.

¶37    There was also circumstantial evidence that Martinson administered the drug to J.E.M. *See State v. Murray*, 184 Ariz. 9, 31 (1995) (probative value of evidence is not reduced because it is circumstantial). To counter the suggestion that the child ingested the carisoprodol by himself, the State presented evidence that J.E.M. did not take pills easily and that K.E. never gave him medication in pill form. Moreover, an empty bottle of carisoprodol pills — prescribed for Martinson — was found on the top shelf of a medicine cabinet with the child-resistant cap intact. And the autopsy revealed a recent abrasion on J.E.M.'s upper lip that the medical examiner testified could have been caused by forcible administration of the drug.

¶38    The State also presented circumstantial evidence that Martinson gave the drug to J.E.M. as a means of retaliating against K.E. *See State v. Routhier*, 137 Ariz. 90, 99 (1983) ("Criminal intent, being a state of mind, is shown by circumstantial evidence."). Trial evidence established acrimony between Martinson and K.E. dating back to 2000, when K.E. called the police and had Martinson forcibly removed for assaulting her. After K.E. obtained legal custody of J.E.M. and an order of protection against Martinson, Martinson violated the protective order and visitation schedule, resulting in renewal and expansion of the protective order, and ultimately including a requirement that he participate in domestic violence

counseling and undergo a psychological assessment. There was also evidence that, at the time of J.E.M.'s death, Martinson was upset because K.E. had recently filed a motion to reinstate supervised visitation exchanges. Martinson expressed fear that having to bear the expense of supervised exchanges would mean he would not be able to see J.E.M. Indeed, when officers questioned Martinson about J.E.M.'s death, he accused K.E. of wanting to limit his involvement with the child.

¶39 During police interviews, Martinson claimed he could not remember what happened to J.E.M. However, post-mortem lividity on the child's body indicated he had been moved and placed on the bed after his death. Additionally, Martinson sent a text message around 8:00 p.m. on Saturday to a friend who was close to J.E.M. The text read: "We love you and will miss you." When the friend called around 9:45 p.m., Martinson spoke of legal paperwork he had received about the motion for supervised exchanges. He complained that he received a letter from K.E. or her attorney every week and that K.E. would just not go away. He also told the friend J.E.M. did not care about him and only wanted to talk about and be with his mother. When the friend asked about J.E.M., Martinson responded that the boy was in his bedroom with the lights out, and he did not know whether he was awake or asleep. Yet at trial, Martinson testified that he had discovered J.E.M. dead hours earlier.

¶40 The State also presented evidence that Martinson tried to commit suicide by taking pills, cutting his wrists, and attempting to suffocate himself with garbage bags. Reasonable jurors could find such conduct indicative of consciousness of guilt and/or acts undertaken as part of a murder-suicide plan.

¶41 Martinson argues there was no evidence the child abuse occurred under "circumstances likely to produce death or serious physical injury." Proof of this element requires "objective evidence of the existence of such circumstances." *State v. Payne*, 233 Ariz. 484, 506, ¶ 70 (2013). But the fact J.E.M. died as a result of the child abuse is "objective evidence" permitting the jury to conclude the abuse occurred under circumstances likely to produce death or serious physical injury. Martinson's claim of insufficient evidence of "physical injury" also fails. The evidence showing that Martinson caused J.E.M.'s death necessarily established that he caused physical injury. *Barrett*, 132 Ariz. at 90 (death necessarily involves serious physical injury).

¶42 Martinson also asserts there was insufficient proof of a causal link between ingestion of carisoprodol and J.E.M.'s death. Specifically, he

argues that, "[a]side from the fact that the court erroneously admitted Dr. Hu's testimony that carisoprodol caused death, the testimony admitted at trial failed to establish the 'independent causation requirement' necessary to prove felony murder." But even if Dr. Hu's causation testimony was erroneously admitted, we may still consider it in determining whether retrial is barred by double jeopardy principles. *See State v. May*, 210 Ariz. 452, 459, ¶ 26 (App. 2005) ("[R]etrial is permitted even though evidence is insufficient to sustain a verdict once erroneously admitted evidence has been discounted, and for purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." (quoting *People v. Olivera*, 647 N.E.2d 926, 931 (Ill. 1995)).

**¶43** Considered in totality, the trial evidence was sufficient to support a finding of guilt beyond a reasonable doubt for knowing or intentional child abuse under circumstances likely to produce death or serious physical injury and for felony murder based on that predicate felony. As a result, double jeopardy principles do not bar retrial of Martinson.

## CONCLUSION

**¶44** We vacate the order dismissing the 2004 Indictment with prejudice and remand to the superior court with instructions to grant the State's motion to dismiss the indictment without prejudice.



AMY M. WOOD • Clerk of the Court
FILED: AA