665 P.2d 48

**STATE of Arizona, Appellee,**

v.

**Dennis Wayne RUMSEY, Appellant.**

**No. 5042-2.**

Supreme Court of Arizona,
En Banc.

April 14, 1983.
Rehearing Denied June 14, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Jessica Gifford, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, for appellant.

FELDMAN, Justice.

Defendant was convicted of first degree murder, a violation of A.R.S. § 13–1105, and of armed robbery, a violation of A.R.S. § 13–1904. He was originally sentenced to life imprisonment for the murder and 21 years imprisonment for the robbery. On appeal, the murder sentence was vacated and the matter remanded for resentencing. *State v. Rumsey,* 130 Ariz. 427, 636 P.2d 1209 (1981). Following a new sentencing hearing, the death penalty was imposed. In the present appeal, defendant contends that he was twice put in jeopardy by imposition of the death penalty after a prior sentence of life imprisonment, thus violating the fifth amendment of the Constitution of the United States as applied to the states by the fourteenth amendment.[1] *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 13–4031.

## · FACTS

On December 6, 1979, defendant was charged by information with armed robbery and first degree murder of George Joseph Koslosky. A jury convicted defendant of all charges. The facts surrounding the robbery are set forth in *State v. Rumsey, supra.* As required by A.R.S. § 13–703, a sentencing hearing was held after conviction on the murder charge. At the original sentencing hearing, the State presented nothing more than the evidence which had been produced at the trial. The only defense witness was the foreman of the jury that had convicted defendant, who testified that the conviction had been based upon the felony murder rule rather than a finding of

premeditation. The State contended that the trial evidence had established the aggravating circumstances which are specified in A.R.S. § 13–703(F)(3), (5) and (6). Defendant argued the existence of a number of mitigating circumstances, including lack of premeditation, conviction by means of the felony murder rule, youth (defendant was 19), and diminished capacity to conform his conduct to the law because of alcohol and drug consumption.

After hearing arguments, the court took the matter under advisement and on July 7, 1980, filed its special verdict, finding that there were no aggravating circumstances. The court specifically found that although there had been a risk of death to the person with the defendant at the time of the killing, that risk was not grave enough to be considered an aggravating circumstance. (A.R.S. § 13–703(F)(3).) It found that the pecuniary gain aggravating circumstance (*Id.* subsec. (5)) did not apply to felony-murder during a robbery, but only to "contract killing" situations. The court further found the murder had not been committed in an especially heinous, cruel or depraved manner. (*Id.* subsec. (6)) Finally, the trial judge found that there had been no mitigating circumstances. In light of these findings, the statute did not permit the court to impose the death sentence. (§ 13–703(E)) Accordingly, defendant was sentenced to imprisonment for life without possibility of parole for 25 years for the murder conviction. He was also sentenced to a consecutive term of 21 years for the robbery.

Defendant appealed, claiming that the sentences violated A.R.S. § 13–116, which prohibits consecutive sentencing for a single act or omission even though that act or omission may be punishable in different ways by different statutes. After defendant had perfected his appeal, the State filed a cross-appeal under A.R.S. § 13–4032(4), which permits appeal by the state from "[a]

---

1. "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const., amend. V.

ruling on a question of law adverse to the state when the defendant was convicted and appeals from the judgment." The State contended on its cross-appeal that the trial court erred in holding that the pecuniary gain aggravating circumstance [2] applied only to a "murder for hire" situation. *State v. Rumsey,* 130 Ariz. at 431, 636 P.2d at 1213. Indeed, in a case decided only three weeks after defendant was sentenced to life imprisonment, this court held that the aggravating circumstance in question does apply where the killing is in furtherance of theft or robbery. *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).[3] In deciding defendant's first appeal, we therefore held that the judge "erred in holding as a matter of law that [he] could not find as an aggravating circumstance that the murder was for monetary gain." *State v. Rumsey,* 130 Ariz. at 431–32, 636 P.2d at 1213–14. Because the trial judge made a legal error in interpreting the statute, we set aside the sentence of life imprisonment and remanded for redetermination of aggravating and mitigating circumstances and resentencing. *Id.* at 432, 636 P.2d at 1214.[4]

On remand, the trial court held another sentencing hearing under A.R.S. § 13–703 and filed a new special verdict. The court found "that the hope of financial gain was a cause of the murder" and that A.R.S. § 13–703(F)(5) was applicable because the "defendant committed the offense ... in expectation ... of pecuniary [gain]." The trial court again found that there were no mitigating circumstances sufficiently substantial to call for leniency. Having found one aggravating circumstance and no mitigating circumstance, the trial court followed the statutory mandate and imposed the sentence of death.

## DOUBLE JEOPARDY

Defendant argues that having first been sentenced to imprisonment for life, he was implicitly "acquitted" of death and that the subsequent imposition of the death penalty was prohibited by the fifth amendment proscription against double jeopardy.

The Supreme Court of the United States has summarized the protection afforded by the double jeopardy clause as follows:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*United States v. DiFrancesco,* 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (*quoting North Carolina v. Pearce,* 395 U.S. at 717, 89 S.Ct. at 2076).

The prohibition against being twice put in jeopardy:

> was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as

---

**2.** "The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13–703(F)(5).

**3.** Justice Gordon, specially concurring, argued that the pecuniary gain aggravating circumstance was applicable only to a hired killer situation. *State v. Clark,* 126 Ariz. at 437, 616 P.2d at 897.

**4.** Justice Struckmeyer dissented, stating that where "punishment of life imprisonment has been imposed for murder, permitting a possible resentence of death if the State cross-appeals will have such a chilling effect as to cause a defendant with a life sentence to forego a meritorious appeal." *State v. Rumsey,* 130 Ariz. at 432, 636 P.2d at 1214. Defendant also raises that argument in this appeal. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

■ The bar against retrial is not absolute. A defendant who succeeds in overturning his conviction may be retried because the reversal on appeal nullifies the original conviction and wipes the slate clean. *Bullington v. Missouri,* 451 U.S. 430, 441–42, 101 S.Ct. 1852, 1859–60, 68 L.Ed.2d 270 (1981). If, however, the defendant has been acquitted or the conviction reversed on the ground the evidence was insufficient to convict, the principles underlying the double jeopardy clause demand that he not be retried.

"The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," for the "public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried .... If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair."

*DiFrancesco, supra,* (citations omitted) (*quoting Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978)).

The Supreme Court considered the application of the double jeopardy clause to sentencing in both *United States v. DiFrancesco, supra,* and *Bullington v. Missouri, supra.* In *DiFrancesco,* the Court held that the prohibition against double jeopardy was not violated by a provision in the Organized Crime Control Act of 1970 (18 U.S.C. § 3576) which gave the United States the right to appeal a sentence imposed upon a "dangerous special offender." The government had sought review of the sentence imposed on DiFrancesco, claiming that the district court had abused its discretion by

imposing sentences that were too lenient. The Court held that the sentencing was not equivalent to trial, so that neither the statutory procedure nor DiFrancesco's prospective resentencing to a longer term of imprisonment was prohibited by the double jeopardy provisions of the fifth amendment. Basic to the *DiFrancesco* decision is the concept that the double jeopardy clause was intended to provide protection only against successive trials. It is only when the defendant has been *tried* and acquitted—or finally convicted—that he may not again be put on trial for the same offense. The court held that ordinary sentencing procedures are not similar to "trial"; imposition of a particular sentence is not an implicit acquittal of more serious punishment [5] and there is, therefore, no consequent prohibition to resentencing with imposition of a more severe punishment.

In *Bullington,* the Supreme Court considered the bifurcated system for imposition of capital punishment. Bullington had been convicted of first degree murder and in a separate sentencing procedure the jury had fixed the punishment at imprisonment for life. Bullington sought and was granted a new trial for error involving jury composition. The prosecution gave notice on remand that it intended again to seek the death penalty. The Missouri Supreme Court held the procedure was permissible, but on certiorari the United States Supreme Court held that Missouri's sentencing procedure for capital cases was equivalent to a trial, so that the State's attempt to impose the death penalty at retrial was prohibited by the double jeopardy clause.

Before adoption of bifurcated systems, the Court had held that the double jeopardy clause did not prohibit imposition of the death penalty at retrial after the defendant had been convicted, sentenced to life, and had succeeded in having his original convic-

---

**5.** *Cf. Green v. United States, supra.* Defendant had been charged with and tried for first degree murder. He was convicted of second degree murder, appealed, and that conviction was reversed. The court held that defendant could not be retired for first degree murder because

he had been tried on that charge and the jury's conviction of second degree murder evidenced a refusal to convict of first degree and a consequent "implicit acquittal" of the higher offense. *Id.* 355 U.S. at 190, 78 S.Ct. at 225.

tion set aside. *See Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Stroud v. United States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).

In deciding *Bullington,* however, the Court noted that although the imposition of a particular sentence usually is not regarded as trial and acquittal of any more severe sentence that could have been imposed, the imposition of a life sentence on Bullington following the sentence hearing at his first trial had effectively acquitted him of whatever was required or necessary to impose the death sentence. The Court distinguished the prior resentencing cases by noting that, unlike the Missouri procedure, the sentencing procedures followed in *Chaffin, Stroud* and *DiFrancesco* did not have the "hallmarks" of a trial on guilt or innocence. *Bullington,* 451 U.S. at 439, 101 S.Ct. at 1858. The essence of the *Bullington* decision is that double jeopardy imparts finality to a sentence "whenever the basis for sentencing is a situation in which the jury agrees or an appellate court decides that the prosecution has not proved its case." *Bullington,* 451 U.S. at 443, 101 S.Ct. at 1860.

In distinguishing between *DiFrancesco* and *Bullington,* the Court cited the following factors as being of importance in determining whether the procedure is a sentencing or a trial within the meaning of the double jeopardy clause: (1) In ordinary sentencing situations, there are no standards set for the court and, thus, no issues of fact for it to resolve in imposing sentence. The discretion of the judge is therefore free of "substantive control or guidance." (2) The judge has power to select from a range of possible sentences; within the statutory limits his authority is broad. (3) The court's judgment is usually based upon matters developed outside the courtroom and the sentencing procedure is essentially nonadversarial in nature. (4) There is no need for findings or conclusions to be placed on the record in order to establish the reason for the sentence chosen. *Id.* at 443–4, 101 S.Ct. at 1860–61.

The Court then compared these factors to the procedure followed in Missouri. After conviction in Missouri, the same jury was reconvened to determine the sentence and explicitly required to determine whether the prosecution had "proved its case." *Id.* at 443, 101 S.Ct. at 1860–61. Unlike the sentencing cases, a separate sentence hearing was mandated where additional facts were required to be proved in order to justify the particular sentence with explicit standards enacted to guide the jury's discretion. Conceding that *DiFrancesco* had also involved a bifurcated proceeding which required the government to prove an additional fact (that the defendant was a "dangerous special offender") in order to justify more severe punishment, the Court further distinguished *DiFrancesco,* stating that it:

> [w]as not a de novo proceeding that gives the Government the opportunity to convince a second factfinder of its view of the facts. Moreover, the choice presented to the federal judge under [the *DiFrancesco* statute] is far broader than that faced by the state jury at the present petitioner's trial. Bullington's Missouri jury was given ... only two choices, death or life imprisonment. On the other hand, if the Federal Government proves that a person convicted of a felony is a dangerous special offender, the judge may sentence that person to "an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized for such felony." Finally, although the statute requires the Government to prove the additional fact that the defendant is a "dangerous special offender", it need do so only by a preponderance of the evidence. This stands in contrast to the reasonable doubt standards of the Missouri statute, the same standard required to be used at the trial on the issue of guilt or innocence.

*Id.* at 440–41, 101 S.Ct. at 1859 (citations and footnotes omitted). The Court held "[b]ecause the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy

Clause to one acquitted by a jury also is available to him with respect to the death penalty, at his retrial." *Id.* at 446, 101 S.Ct. at 1862.

## APPLICATION TO ARIZONA PROCEDURE

A review of Arizona procedure reveals its dissimilarity to the sentencing cases and its similarity to the *Bullington* sentencing procedure. In Arizona, as in Missouri, a special procedure is applicable to capital cases. The resemblance of this procedure to trial is apparent on examination of A.R.S. § 13–703. Under this statute, if the defendant is found guilty of first degree murder, the judge who presided at the trial is required to conduct a separate sentencing hearing to determine the existence of aggravating or mitigating circumstances. While the court may consider material contained in a presentence report, evidence relevant to aggravating or mitigating circumstances is presented at the hearing. Evidence of aggravating circumstances is governed by the rules of evidence at criminal trials.[6] All evidence which was admitted at the trial may be considered by the judge on aggravation or mitigation without reintroduction. The parties are entitled to rebut and to argue. The burden of establishing the existence of aggravating circumstances is on the prosecution. The burden of establishing the existence of mitigating circumstances is on the defendant. The Arizona statute further requires that the court return a special verdict setting forth its findings of aggravating and mitigating circumstances. The court is not without standards to guide it. The aggravating circumstances which may be considered are specified in § 13–703(F). Specific mitigating circumstances are contained in § 13–703(G), which also permits consideration of any additional factor relevant in determining whether to impose a sentence less than death, including "any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." Nor does Arizona procedure give the court broad discretion in selecting the punishment. There are but two alternatives—life imprisonment or death. Specific instructions are given with regard to the final conclusion to be reached. If there are aggravating circumstances found, then the court "shall impose a sentence of death" provided "there are no mitigating circumstances sufficiently substantial to call for leniency."

Comparing the procedure required by the Arizona statute to the rationale adopted by the Supreme Court in both *DiFrancesco* and *Bullington,* we can only conclude that, like Missouri, Arizona procedure so closely resembles a trial that the following language is applicable:

> By enacting a capital sentencing procedure that resembles and is like a trial on the issue of guilt or innocence, ... [the state] *explicitly requires* the [judge] to determine whether the prosecution has "proved its case." ... [T]he sentence of life imprisonment which petitioner received at his first trial meant that "the [judge] has already acquitted the defendant of whatever was necessary to impose the death sentence."

*Bullington v. Missouri,* 451 U.S. at 444–45, 101 S.Ct. at 1861. If the defendant, like Bullington, has been acquitted of death because the State failed to prove its case, then that verdict, like a verdict of acquittal on the issue of innocence, is final. *Id.* at 1862, 101 S.Ct. at 1862.

The State advances various arguments to support its contention that the *Bullington* analysis should not be applied to the Arizona sentencing procedure. The first of these arguments focuses on the differences between the Arizona sentencing procedure and that followed in Missouri. One difference is that the Missouri statute expressly sets forth the standard of proof required—beyond a reasonable doubt. The Arizona statute does not, but we have already held that "[t]he statute does not indicate the degree of certainty with which these [ag-

---

6. Mitigating evidence may be admitted even if not in compliance with the Rules of Evidence.

A.R.S. § 13–703(C).

gravating] circumstances must be established, but we have always assumed, and we so hold now, that the state must prove the existence of aggravating circumstances beyond a reasonable doubt." *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980).

■ Another difference is that although the Arizona statute requires proof of aggravating circumstances to conform to the rules of evidence, mitigating evidence need not. We note, however, that admission of three of the four categories[7] of evidence considered at sentencing are governed by the rules of evidence. We do not believe the introduction of non-conforming mitigating evidence at the sentencing hearing significantly distinguishes the Arizona procedure from that discussed in *Bullington.*

The major difference between Missouri and Arizona procedure is that the Arizona statute provides that the judge rather than the jury hear the evidence, apply the law and decide upon the punishment. However, the analysis in *Bullington* focused on the procedures by which sentence was determined rather than the identity of the sentencer. The fact that the trial judge, rather than the jury, is the sentencer does not necessarily make that hearing any less like a trial. We have already noted that the Arizona procedure is not similar to that followed at *DiFrancesco*-type sentencing, where the judge is free to impose from a wide range of choices and need not express or articulate the specific reasons for the

decision. The Arizona statute gives the judge only two choices, life or death, and requires that the "court shall return a special verdict setting forth its findings as to the existence or nonexistence of each of the [aggravating and mitigating] circumstances ...." § 13–703(D). In returning the special verdict in the case at bench, the procedure was similar to that followed in a bench trial where findings of fact and conclusions of law have been requested.[8] We conclude that under the *Bullington* analysis, the "hearing" is effectively a "trial" to the bench.

For purposes of double jeopardy, it has never made a difference whether a case was tried before a judge or a jury. *See United States v. Morrison,* 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976), in which the Supreme Court stated: "Since the Double Jeopardy Clause of the Fifth Amendment nowhere distinguishes between bench and jury trials, the principles given expression through that Clause apply to cases tried to a judge." *Id.* at 3, 97 S.Ct. at 26 (*quoting United States v. Jenkins,* 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975)).[9]

■ The State next argues that the original sentence hearing, review, resentencing and final review by this court are all part of a single procedure, so that defendant's "trial" is not concluded until the correct penalty is finally determined by this court. It is true that we have held that in all cases

---

**7.** The four types of evidence considered at sentencing are evidence of aggravating and mitigating circumstances which was admitted at trial and aggravating and mitigating evidence admitted at the sentence hearing. The first two categories may be considered without being reintroduced. *See* A.R.S. § 13–703(C).

**8.** For instance, one of the aggravating circumstances advanced by the State at the first sentence hearing was that the defendant had created a grave risk of death to his alleged accomplice, Kimberly Holmes. In returning its special verdict, the trial court found that although there had been a risk of death to Holmes, it was not a "grave risk" as required by the statute and therefore the aggravating circumstance listed in A.R.S. § 13–703(F)(3) was legally inapplicable. Obviously, this was a finding of fact and a conclusion of law drawn from

it. Similarly, the State had claimed that the murder had been committed in an especially heinous, cruel or depraved manner. § 13–703(F)(6). The court found under the facts that the murder had not been especially heinous, cruel or depraved and therefore concluded that the second of the aggravating circumstances advanced by the State was legally inapplicable. In considering the applicability of the pecuniary gain aggravating circumstance, § 13–703(F)(5), the court held that the factor was inapplicable as a matter of law.

**9.** It has been intimated that the Arizona procedure is not similar to a trial because only the judge is presiding. *Knapp v. Cardwell,* 667 F.2d 1253, 1265 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982). In our view, this statement is contrary to *United States v. Morrison, supra.*

where the death penalty has been imposed[10] we will conduct an independent review of aggravating and mitigating evidence and will decide independently whether the death sentence should be imposed in each case. *State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976). We also conduct a review of proportionality in each case to consider "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *Id.*

There is support for the argument that the division of a criminal action into two parts of a single proceeding is not prohibited by the double jeopardy clause. In *Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), the Court held that the Maryland juvenile procedure did not violate the double jeopardy clause. That procedure involved a hearing before a master appointed by the juvenile judge, followed by the juvenile judge's review of the master's recommendations. The juvenile court had power to accept the master's recommendations or make a de novo determination. *Swisher* is inapposite to the capital punishment procedure in Arizona. Sentencing is not commenced in this court and referred by us to a master; it is commenced in the superior court and appealed to us as a reviewing court. The superior court judge does not merely make recommendations for our acceptance or rejection; he presides at a hearing, takes evidence, makes findings and conclusions in the form of a special verdict and enters judgment which is then appealed to this court.

While we have an independent duty of review, we perform it as an appellate court, not as a trial court. We have never held that if the trial court finds sufficient mitigating circumstances we have independent

power to reject its factual and legal conclusions and impose the death penalty.[11] Our obligation on review is to determine whether "the punishment imposed is greater than the circumstances of the case warrant." *State v. Richmond,* 114 Ariz. at 196, 560 P.2d at 51. In capital cases "we necessarily undertake an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances ... [to] determine for ourselves if the latter outweigh the former ...." *Id.* (citations omitted). Our proportionality review is not to determine whether life imprisonment was too lenient, but, rather, to determine "whether the sentences of death are excessive or disproportionate." *Id.* The purpose of our review is well stated in the Supreme Court's opinion regarding the Florida statute, which is similar to ours.

> That legislation provides that after a person is convicted of first-degree murder, there shall be an informed, focused, guided, and objective inquiry into the question whether he should be sentenced to death. If a death sentence is imposed, the sentencing authority articulates in writing the statutory reasons that led to its decision. Those reasons, and the evidence supporting them, are conscientiously *reviewed* by a court which, because of its statewide jurisdiction, can assure consistency, fairness, and rationality in the evenhanded operation of the state law.

*Proffitt v. Florida,* 428 U.S. 242, 259–60, 96 S.Ct. 2960, 2970, 49 L.Ed.2d 913 (1976) (emphasis supplied).

We hold, therefore, that the Arizona procedure is not a single indivisible hearing, but instead resembles a trial on the issue of life or death followed by the utilization of this court's appellate process to make a conscientious review on a statewide basis in

---

10. Such cases are automatically appealed to this court under Ariz.R.Crim.P. 31.2(b), 17 A.R.S. However, automatic appeal is required only if defendant is sentenced to death. *Id.* No appeal is *required* if life imprisonment is imposed. The state is not permitted an appeal unless the defendant has appealed. A.R.S. § 13–4032(4). This, of course, is inconsistent with the state's "single procedure" argument.

11. There is considerable doubt that we could hold to the contrary. The double jeopardy clause implies that defendant has a right to have his hearing concluded, subject to appeal, before a *single* tribunal. *See DiFrancesco,* 449 U.S. at 128–29, 101 S.Ct. at 432–33.

order to assure rationality and "evenhanded operation" in the imposition of the death penalty. This review is conducted in order to determine whether the death penalty, when imposed by the trial court, should be reduced to life.

The State next argues that the double jeopardy problem could be obviated if we were to hold that where the trial court has erred on a matter of law in failing to impose the death sentence, the case may be remanded for resentencing on the condition that the State not be allowed to introduce new contentions or evidence with regard to aggravating circumstances. There are several flaws in this argument. First, we cannot rewrite the statute with all of its requirements which, presumptively at least, apply to both the first and second hearing. Next, we have already held in *State v. Gretzler* (*Gretzler II*), 135 Ariz. 42, 659 P.2d 1 (1983), that on remand for resentencing after the initial imposition of the death sentence, the state may present evidence regarding aggravating circumstances which were neither argued nor advanced at the first sentence hearing.[12] Third, and most important, in holding that the Missouri procedure did violate the double jeopardy clause, the United States Supreme Court stated as follows:

> [O]ur decision today does not at all depend upon the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at petitioner's first trial or upon its statement that it would introduce no new evidence in support of its contention that petitioner deserves the death penalty. Having received "one fair opportunity to offer whatever proof it could assemble," the State is not entitled to another.

*Bullington,* 451 U.S. at 446, 101 S.Ct. at 1861–62 (*quoting Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)).

Finally, the State argues that because the first sentencing was legally erroneous, resentence to the death penalty did not put defendant twice in jeopardy, but merely corrected the legal error made at the first hearing and imposed the punishment which the law always had required. This court and the Supreme Court have rejected that argument. In speaking of the effect of a legally erroneous acquittal by directed verdict, this court stated:

> An acquittal results after a consideration of the facts and a finding of innocence of the charge.
>
> The law attaches particular importance to an acquittal. In a historical perspective, "Perhaps the most fundamental rule ... of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy and thereby violating the Constitution.'" Likewise, this court attaches particular importance to acquittals. We have consistently ruled that a defendant once acquitted of a particular crime, is protected from further prosecution by the prohibition of double jeopardy. The state is not authorized to appeal from a judgment of acquittal.
>
> The state contends that the motion for acquittal was granted in error based on the trial judge's misinterpretation of [the statute]. Even if the state's position is correct, the defendant may not be retried even though the acquittal was based upon an egregiously erroneous foundation.

*Rolph v. City Court of the City of Mesa,* 127 Ariz. 155, 158, 618 P.2d 1081, 1084 (1980) (citations omitted); *see also United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

We conclude that Arizona's capital sentencing procedure is not significantly distinguishable from the Missouri procedure considered in *Bullington, supra.* Under that case, therefore, the sentence of life imposed by the trial judge was a finding that the

---

12. Remand for a second sentence hearing in *Gretzler* did not violate the double jeopardy clause because Gretzler had received the death penalty at his original sentencing and there

was, therefore, no implied acquittal as in the case at bench. *Knapp v. Cardwell,* 667 F.2d at 1264.

state had failed to prove whatever was necessary for conviction of death and was an implicit acquittal entitled to finality. We hold therefore, that the sentence to death after the second hearing violated the double jeopardy provisions of the fifth amendment to the United States Constitution as applied to the State of Arizona by the fourteenth amendment. *Bullington v. Missouri, supra.*

This holding makes it unnecessary to discuss the other contentions raised by defendant. Therefore, it is ordered that the defendant's sentence be reduced from death to imprisonment for life without possibility of parole for 25 years from the date on which he was originally sentenced. The robbery sentence of 21 years of imprisonment is to be served consecutively to the term of life imprisonment.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.