710 P.2d 449

**STATE of Arizona,
Appellee/Cross-Appellant,**

v.

**Thomas Boyd TITTLE,
Appellant/Cross-Appellee.**

**No. 6313.**

Supreme Court of Arizona,
En Banc.

Dec. 4, 1985.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Gary Fadell, Asst. Atty. Gen., Phoenix, for appellee/cross-appellant.

J. Douglas McVay, Phoenix, for appellant/cross-appellee.

GORDON, Vice Chief Justice.

A jury convicted defendant, Thomas Boyd Tittle, of first degree murder, A.R.S. § 13–1105, and armed robbery, A.R.S. § 13–1904. The trial court sentenced him to death for the murder and to a consecutive 21-year term for the armed robbery conviction.

On September 2, 1982, the body of a black male was found in the desert north of Phoenix. Sheriff's detectives later found that the body was that of Dorzee "Bubba" Hill. Hill was a known heroin dealer who worked the "Buckeye Strip", an area of Buckeye Road in Phoenix bordered by 7th and 15th Avenues. Defendant and his girl friend, Sandra Winegar, were soon thereafter suspects in the murder.[1]

An autopsy was performed on the body and it was determined that Hill died from a blow to the head with a blunt instrument, later discovered to be the blunt end of an axe. Laboratory analysis revealed the presence of cat hairs and human Caucasian hairs on Hill's body. Sheriff's detectives surmised that Hill was killed elsewhere and transferred to the desert by car and dragged by more than one person to the discovery place.

Investigation of the crime led sheriff's detectives to believe that defendant and Winegar were involved. Sheriff's Detectives Al Weiss and Ralph Dominguez located defendant and Winegar in Hagerman,

---

1. In a separate trial Winegar was convicted of first degree murder and armed robbery. She was sentenced to life imprisonment for the murder and a concurrent 10.5–year term for the robbery. On appeal her convictions were overturned and a new trial granted. *State v. Winegar*, 711 P.2d 579 slip op. No. 6131, Dec. 4, 1985.

Idaho, Winegar's home town. After a confrontation on a Hagerman street by Weiss, Dominguez and four local police officers, defendant and Winegar were transported 20 miles to Gooding, Idaho, for further questioning. Detective Dominguez primarily questioned Winegar and Detective Weiss primarily questioned defendant in a separate room. A search warrant was executed on the suspects' car and the house where they were staying. At the conclusion of the four-hour questioning session defendant and Winegar were charged with first degree murder and armed robbery.

At trial the state's main witness was Detective Weiss who detailed the initial investigation, the confrontation on the Hagerman street and the transport of defendant and Winegar to Gooding, Idaho. Allegedly, facilities in Hagerman were not adequate to conduct proper interviews.

Weiss testified that defendant confessed to the murder of Dorzee Hill. Defendant told Weiss that he and Winegar were upset because Hill had sold them bad heroin which caused Winegar to become ill. Hill also had made repeated sexual advances toward Winegar. Defendant told Weiss of a plan he and a man named Jack Henry discussed in Winegar's presence, whereby they would rob Hill of his drugs and money by hitting him over the head with a tire bat.[2] This plan was never carried out with Henry as a participant.

Defendant told Weiss that on the day of the murder, Winegar sought out Hill, told him defendant no longer lived at the apartment and asked him to come over. It was contemplated that once Hill was inside the apartment, defendant would beat him over the head.

According to defendant, when Winegar returned Hill did not immediately follow, but came in the apartment shortly thereafter. Hill immediately headed toward the bedroom. Defendant, who was hiding in the kitchen, sneaked up from behind and struck Hill on the head with the blunt end

2. A tire bat is a cylindrical wooden instrument with a metal ring on the end. It is approximate-

of an axe. Defendant then struck Hill again as he attempted to get up off the floor. Defendant next took drugs and approximately $82.00 from Hill's pockets. The two then injected themselves with heroin. Winegar then went to the store and bought wine, which was consumed by the two immediately upon her return, and plastic bags in which to wrap Hill's body.

Defendant and Winegar drove Hill's car and abandoned it in a south Phoenix neighborhood. Then late at night the two disposed of the body in the desert north of Phoenix near the Carefree highway. Defendant and Winegar remained in Phoenix for a few days and then drove to California to visit defendant's family. From there they drove to Hagerman, Idaho, to visit Winegar's family.

At trial defendant testified and admitted killing Dorzee Hill with an axe. He denied ever planning to rob Hill, but his testimony was consistent with his previous statement to Detective Weiss that he and Winegar took money and drugs from Hill's body. Defendant told of an earlier argument he had with Hill over the quality of heroin he was selling. At that argument Hill allegedly threatened to kill defendant over $100.00 for drugs previously sold to defendant on credit. Defendant then testified that he was frightened when Hill came over to the apartment because he thought Hill and a bodyguard would attempt to collect the $100.00. Hill came alone. At trial Sandra Winegar did not testify, claiming the fifth amendment privilege against self-incrimination, even though she was granted immunity by the state.

Defendant raises numerous issues and the state has cross-appealed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 13–4031, –4032, and –4033 and Rule 31.2(b) Ariz.R.Crim.P., 17 A.R.S.

## I. SELF–DEFENSE INSTRUCTION

At the end of defendant's trial the jury was instructed on the issue of self-defense. The instruction read as follows:

ly the size and weight of a billy club.

"The Defendant was justified in using or threatening physical force in self-defense if the following two conditions existed: (1), a reasonable person in the Defendant's situation would have believed that physical force was immediately necessary to protect against another's use or attempted use of force.

(2), the Defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the Defendant's situation.

However, a person may use deadly physical force in self-defense to protect himself from another's use or threatened use of deadly physical force.

Self-defense justifies the use or threat of physical force only while the apparent danger continues. The right to use physical force in self-defense ends when the apparent danger ends.

Actual danger is not necessary to justify the use of physical force in self-defense. It is enough if a reasonable person in the Defendant's situation would have believed that he was in immediate physical danger.

Deadly physical force means:

(1), force which is used for the purpose of causing death or serious physical injury. Or:

(2), force used in a way which creates a substantial risk or risk of death or serious physical injury. Or:

(3), force which can create in its intended use a substantial risk of death or serious physical injury.

*As to the death in this case, if you decide that the Defendant's conduct was justified, you must find the Defendant not guilty of the crimes of murder first, murder second and manslaughter."* (Emphasis added.)

■ The defendant argued that the instruction constituted fundamental error and impermissibly shifted the burden of proof by requiring the jury to decide defendant's conduct was justified prior to acquitting him. We agree. The state conceded this point in its brief and based on this issue alone defendant is entitled to a new trial.

In *State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984), this Court held that the failure to fully instruct the jury that an accused's burden concerning self-defense is limited to raising a reasonable doubt and the burden on the state was then to disprove beyond a reasonable doubt that defendant acted in self-defense constituted fundamental error. Although Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S., requires a party to object specifically to an instruction or portion thereof in order to preserve the issue on appeal, where the matter is vital to the rights of a defendant the trial judge is required to instruct the jury on its own motion. *State v. Arnett,* 119 Ariz. 38, 49, 579 P.2d 542, 553 (1978); *State v. Baker,* 126 Ariz. 531, 533, 617 P.2d 39, 41 (App.1980).

■ At trial and absent objection from the state, defendant sought and obtained self-defense instructions in accord with Recommended Arizona Jury Instructions Nos. 4.01, 4.04 and 1.058. However, the failure of the trial court to inform the jury of each side's burden of proof was fundamental error since defendant testified that he acted in self-defense.

Because we must reverse as a result of erroneous jury instructions, we need not consider all the questions raised by the defendant. We will, however, consider those questions likely to be raised again on retrial, keeping in mind that different evidence presented at retrial may mandate different results.

## II. LESSER INCLUDED OFFENSE INSTRUCTION

The defendant alleges that the trial court committed fundamental error when it gave the following instruction:

"The Defendant is not on trial for any act or conduct not alleged in the Indictment or which may be a lesser included offense of the acts or conduct alleged in the Indictment."

■ The trial court did, however, give instructions to the jury that it could consider the lesser crimes of second degree murder and manslaughter. It also submitted to the jury an instruction on the crime of theft only in written form. Although the instruction in question is confusing there was no objection raised at trial. On remand the trial court should omit the language concerning lesser offenses for those acts or crimes not alleged in the indictment. This deletion will eliminate any possible misunderstanding as to the jury's ability to convict defendant of a lesser included offense.

## III. AGGRAVATING CIRCUMSTANCE —A.R.S. § 13–703(F)(1)

Defendant was convicted in 1965 in California of robbery. At the aggravation-mitigation hearing the state proved the conviction. A.R.S. § 13–703(F)(1) states the following constitutes an aggravating circumstance:

"(1) The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable."

Defendant argues that his robbery conviction cannot be used to establish this aggravating circumstance because currently in Arizona a first time robbery conviction carries a penalty of two to five years in prison. However, both parties agree that in 1965 Arizona's penalty for a first time robbery conviction was five years to life.

■ Our interpretation of A.R.S. § 13–703(F)(1) compels us to agree with the trial court which determined that defendant's 1965 robbery conviction could be considered an aggravating circumstance. The statute does not read that the offense must be punishable by life imprisonment or death under current Arizona law. The words "was imposable" clearly require the sentencing court to look at the potential penalty imposable at the time a defendant was sentenced for the original conviction and not at the time of sentencing for the subsequent murder. This interpretation is consistent with the rule of construction that statutes will be construed according to the fair meaning of their terms and to effect the objects of the penal code. *See* A.R.S. § 13–104. We read A.R.S. § 13–703(F)(1) in a manner which demands this result.

## IV. MITIGATION EVIDENCE

Defendant contends that the trial court erred in its failure to find two mitigating circumstances. Specifically, he argues that his heavy heroin use significantly affected his ability to appreciate the wrongfulness of his acts and conform his conduct to the law. Second, he argues that his remorse about the killing and model prisoner status should be considered. We disagree.

### a) Defendant's Heroin Addiction

Evidence before the trial court was overwhelming as to defendant's history of heroin abuse and that he used the drug on the day of the killing. We rejected a similar request for leniency in *State v. Jeffers*, 135 Ariz. 404, 430–31, 661 P.2d 1105, 1131–32, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983) where evidence indicated that Jeffers injected heroin on the day he committed the killing of which he was convicted. In *Jeffers* we noted:

"While intoxication is not a defense, a jury may consider the effects of voluntary intoxication upon an accused's culpable mental state. A.R.S. § 13–503; *State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980). However, wholly voluntary acts of a defendant will not excuse his subsequent criminal conduct." 135 Ariz. at 431, 661 P.2d at 1132.

■ The trial court weighed the evidence in the instant case and correctly determined that defendant's heroin use did not impair his ability to appreciate the wrongfulness of his conduct. Defendant was capable of maintaining a full-time job while a heroin addict and testified at trial that heroin had a calming effect on him. The trial record indicates defendant's rather detailed

plan to kill Dorzee Hill. The body and car of the decedent were carefully disposed of after the killing even though the defendant and Sandra Winegar used heroin and drank wine immediately after the murder. An escape was planned. Defendant demonstrated detailed recall of the events of the murder and was able to demonstrate at trial exactly how he killed Dorzee Hill. We hold that defendant's heroin use does not constitute a mitigating circumstance under A.R.S. § 13–703(G)(1).

### b) Remorse and Model Prisoner Status

■ Defendant's remorse for the killing and his status as a cooperative, model prisoner are circumstances which should be considered but which do not sufficiently establish a mitigating circumstance in this case substantiating defendant's request for leniency. In *State v. Gillies*, 142 Ariz. 564, 691 P.2d 655 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (*Gillies II*), the defendant maintained that he changed his attitude while in prison, becoming religious and remorseful. We rejected Gillies' request for leniency after balancing his criminal behavior:

> "While these changes are commendable, persons sentenced to death frequently change their outlook on life. Balancing these human factors against Gillies' former behavior militates in his favor, but not such as to require leniency, given the seriousness of his crimes." 142 Ariz. at 571, 691 P.2d at 662.

While defendant may be a remorseful model prisoner and a help to the prison minister, the evidence presented does not convince us that on balance this changed lifestyle is sufficiently substantial to call for leniency. We hold that while defendant's cooperation in prison and subsequent remorse may possibly constitute factors in mitigation, they do not warrant leniency in this case under A.R.S. § 13–703(G)(1).

The above discussion regarding aggravating and mitigating circumstances is not intended to be the law of the case on retrial. Should defendant be convicted on retrial, he will be entitled to a new sentencing hearing pursuant to A.R.S. § 13–703. Both the prosecution and defendant may present new evidence and possibly the factual tenor of the case may prove to be different. In short, our rulings in sections III and IV of this opinion are not to be res judicata at a subsequent hearing in this case, and are intended only to dispose of the issues raised in this appeal.

### V. VOIR DIRE OF TRIAL JUDGE

■ Defendant argues that he should have been allowed to voir dire the trial judge to discover possible bias or prejudice in the same manner that potential jurors are examined. This novel argument was recently raised in *State v. Rossi*, 146 Ariz. 359, 706 P.2d 371, 381 (1985), and is rejected now for the same reasons. Defendant never raised the issue at the trial court and may not raise the issue for the first time on appeal. *State v. Acree*, 121 Ariz. 94, 98, 588 P.2d 836, 840 (1978). Defendant did not request a voir dire examination of the trial judge nor did he request a change of judge for cause. He does not allege any bias or prejudice on the part of the trial judge. Since an objection to the sitting of a trial judge may not be raised in the first instance on appeal, *State v. Rossi*, 706 P.2d at 381, defendant has waived this issue.

We have reviewed the record for fundamental error, A.R.S. § 13–4035. We have found none and remand for new trial proceedings not inconsistent with this opinion.

### VI. STATE'S CROSS–APPEAL

Aggravating Circumstances—Double Jeopardy.

An aggravation-mitigation hearing was held pursuant to A.R.S. § 13–703. Following the hearing, the trial court concluded that two aggravating circumstances existed. The court found that pursuant to A.R.S. § 13–703(F)(1), defendant's prior California robbery conviction was punishable by life imprisonment in Arizona in 1965, the date of the conviction. The court also found that pursuant to A.R.S. § 13–703(F)(5) the murder was committed for the

receipt, or in expectation of the receipt, of anything of pecuniary value.

■ The state introduced a certified copy of defendant's prior robbery conviction from California. The trial court did not find that this same conviction constituted a third aggravating factor pursuant to A.R.S. § 13–703(F)(2). ("The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person.") The state has cross-appealed, maintaining that as a matter of law a prior conviction of robbery constitutes an aggravating circumstance for purposes of § 13–703(F)(2). We agree.

In *State v. Nash*, 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985), this Court held that we may take judicial notice that certain crimes are, by definition, violent felonies against others. In so holding, we found Nash's 1936 robbery conviction to be an aggravating circumstance within the meaning of A.R.S. § 13–703(F)(2). *See also State v. Watson*, 120 Ariz. 441, 448, 586 P.2d 1253, 1260 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1978) (Fear of force is an element of robbery and the conviction of robbery presumes that such fear was present); *accord, State v. Poland*, 144 Ariz. 388, 406, 698 P.2d 183, 201 (1985), *cert. granted*, — U.S. ——, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985) (*Poland II*). We hold that as a matter of law a robbery conviction constitutes an aggravating circumstance within the meaning of A.R.S. § 13–703(F)(2). On remand, the defendant's 1965 robbery conviction, if proved by the state, may properly constitute two aggravating circumstances, A.R.S. §§ 13–703(F)(1) and (2). However, in its balancing of factors, the trial court may only weigh aggravating circumstances arising out of the 1965 robbery once so as to avoid any possibility of double punishment.

■ The next and more troublesome issue is whether the double jeopardy clause [3] of the fifth and fourteenth amendments to the United States Constitution prohibit a finding on remand that defendant's robbery conviction constitutes an aggravating circumstance. We find no double jeopardy prohibition.

The double jeopardy clause protection is said to consist of three separate constitutional protections. One, it protects against a second prosecution for the same offense after acquittal. Two, it protects against a second prosecution for the same offense after conviction, and three, it protects against multiple punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Rumsey*, 136 Ariz. 166, 168, 665 P.2d 48, 50 (1983), *cert. granted*, 464 U.S. 1038, 104 S.Ct. 697, 79 L.Ed.2d 163 (1983), *affirmed, Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). The United States Supreme Court has held that double jeopardy consequences attach to a capital sentencing proceeding whenever it resembles a trial. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). Later, in *Arizona v. Rumsey, supra*, the Court noted the capital sentencing procedure in Arizona resembles a trial for purposes of the double jeopardy clause.

In *State v. Rumsey, supra*, this Court had occasion to review double jeopardy principles and held that once a defendant is acquitted of the death penalty and sentenced to life imprisonment, he could not thereafter, at a subsequent resentencing, receive the death penalty for the same offense. *Rumsey*, however, does not support the defendant's contention that on remand in this case an aggravating circumstance not found at the first trial can not thereafter be established. We recognized this fact in *Rumsey*, 136 Ariz. at 174, n. 12, 665 P.2d at 56, n. 12. (Remand for a second sentencing hearing in *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77

---

**3.** "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const., amend. V.

L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 32, 77 L.Ed.2d 1452 (1983), did not violate the double jeopardy clause because Gretzler had received the death penalty at his original sentencing and there was therefore no implied acquittal, as in the case at bench.)

The instant case is factually reminiscent of *State v. Gretzler, supra,* and *State v. Poland, supra.* In *Gretzler,* after conviction for first degree murder, defendant was sentenced to death upon a finding of two aggravating circumstances. On resentencing, defendant was again sentenced to death, the trial court finding two additional aggravating circumstances. Gretzler argued the additional findings violated double jeopardy, citing *Bullington v. Missouri, supra.* We rejected Gretzler's contention, citing *Knapp v. Cardwell,* 667 F.2d 1253 (9th Cir.1982), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982):

> "The Ninth Circuit Court in *Knapp* stated that, 'The present case is clearly distinguishable from Bullington.' *Id.* at 1265. It pointed out that the defendants in *Knapp,* including Gretzler, received the death penalty at their original sentencing, not life imprisonment. Thus, 'There exists no implied "acquittal" in the case. The sentence that can be imposed on resentencing here cannot be more severe than that previously assessed.' *Id.* at 1265 (citation omitted)." 135 Ariz. at 49, 659 P.2d at 8.

In *State v. Poland, supra,*[4] after conviction of first degree murder and the death sentence imposed, defendant received a new trial. Upon remand defendant was retried before a jury and found guilty of two counts of first degree murder and again sentenced to death. On appeal, defendant argued that he was impliedly "acquitted" of the death penalty at the appellate level because in *Poland I,* 132 Ariz. 269, 645 P.2d 784 (1982), we overturned the single aggravating circumstance upon which the previous death sentence was

based. Upon remand for resentencing an aggravating circumstance not originally found was used as the basis of the death penalty. The majority of this Court held in *Poland II* this did not offend the double jeopardy clause. Based on the logic of *Poland II* and *Gretzler* the imposition of the death penalty on remand would not offend double jeopardy.

This case is remanded to the trial court for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

4. Although I join the majority in the instant case I still adhere to my dissent in *State v. Poland,* *supra,* 144 Ariz. at 407–412, 698 P.2d at 202–207.