713 P.2d 283

**STATE of Arizona, Appellee,**

v.

**Gary Keith GRIFFIN, Appellant.**

No. 6503.

Supreme Court of Arizona,
En Banc.

Jan. 27, 1986.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

GORDON, Vice Chief Justice.

A jury convicted defendant, Gary Keith Griffin, of four counts of sexual assault on January 17, 1985. Each offense was found to be of a dangerous nature and it was also found that the defendant committed the crimes while on parole for sexual battery from the state of Florida. The trial court sentenced defendant to a term of life imprisonment on Count I. The trial court ordered Counts II, III and IV be served concurrently with each other, but consecutive to Count I. This Court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031–4033 and Rule 31, Ariz. R.Crim.P., 17 A.R.S.

FACTS

The victim met the defendant at a local Phoenix bar on July 7, 1984. She danced with defendant twice and also danced with another man, also named Gary. She gave the "other Gary" her telephone number but refused to give her number to defendant. The victim later received telephone calls from "Gary" asking if he could come over. Each time he called the victim replied "no". On the night of July 11, 1984 "Gary" called and was told not to come over due to the late hour. A female friend of the victim, who lived across the apartment hallway, stopped at the victim's apartment. While the neighbor and the victim were conversing, the defendant knocked at the victim's door. The victim was surprised because all along she believed she was speaking with the "other Gary" on the telephone. However, since she recognized the defendant, she let him in her apartment. He brought a six-pack of beer with him. The evidence was unclear as to how defendant obtained the victim's telephone number and address. However, while the victim was at the bar she had left her purse on the table to dance. Inside her purse was an address book upon which the victim's name, address and phone number appeared, from which the defendant could have copied the information.

While the three conversed, the victim proceeded to do her homework. At approx-

imately midnight the neighbor went home. Immediately thereafter the sexual assaults began. Defendant held a knife to the victim's throat, ordered her into the bedroom, forced her to disrobe and then ordered her to undress him. The victim initially resisted and was repeatedly slapped in the face. During the course of this ugly scenario, defendant forced the victim to: 1) commit oral sex on him (Count I); 2) lick his anus (Count II); 3) have sexual intercourse with him (Count III); and 4), submit to anal intercourse (Count IV). The entire time defendant threatened the victim with a knife. Defendant tied the victim with the cord of an electric iron and left the apartment.

Defendant was subsequently arrested and questioned by Detective Kraemer. During the questioning, defendant admitted to having oral sex and vaginal intercourse with the victim, but denied any act of anal intercourse. However, at trial he admitted to the act of anal intercourse. Defendant maintained the two had engaged in consensual sexual relations.

On appeal defendant raises two issues. First he contends that the trial court erred in determining that he was properly advised of his rights in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and that, therefore, the statements he made to Detective Kraemer were not voluntary. Second, he contends that the consecutive sentences imposed by the trial court violated his rights against double punishment and double jeopardy.

I. Voluntariness of statements

Defendant contends that his conviction should be reversed and the matter remanded for a new trial because the state allegedly failed to prove statements made by defendant to Detective Kraemer were voluntary. We disagree.

Defendant filed a motion requesting a voluntariness hearing and the hearing was held on January 14, 1985. Detective Kraemer testified as follows regarding his initial contact with defendant:

"Q   How did the contact start?   What was the first thing that happened?
A   Well, when I first contacted him I told him why he was under arrest.
Q   What did you tell him?
A   That he was a suspect and under arrest for the sexual assault that occurred on the 11th involving [the victim] at her home, or her apartment.
Q   After you told him that, did you give him any Miranda rights?
A   Yes, I did.
Q   And did you do that from memory or from a card?
A   From a card.
Q   And after you had read those rights to him, did he make any indication to you that he—did he acknowledge them to you in any way?
A   Yes.   When I asked him if he understood, he replied yes.
Q   After you asked the Officer—strike that.
After you gave him his Miranda rights, what happened next?   What was the next conversation that was had?
A   I asked him if he wanted to explain his side of the story and he proceeded to tell me his version of what had happened."

Kraemer further testified that he did not threaten defendant, raise his voice or become forceful during the conversation. At the conclusion of Kraemer's testimony the trial court found that the statements made by defendant to Kraemer were voluntary. Kraemer's version of the conversation was substantially corroborated by defendant's own testimony at trial:

"Q   So, Detective Kraemer read you your rights, correct?
A   Yes, he did.
Q   And you knew you didn't even have to talk to him?
A   That's correct.
Q   But you did talk to him, didn't you?
A   Yes, sir.
Q   Did you explain to Detective Kraemer what had happened?
A   Yes, I tried to.

Q And you admitted to Detective Kraemer that you had had intercourse with oral sex, correct?

A With [the victim], yes, sir."

■ Incriminating statements obtained during custodial interrogation are not admissible unless *Miranda* warnings are administered. *State v. Montes*, 136 Ariz. 491, 494, 667 P.2d 191, 194 (1983); *State v. James*, 141 Ariz. 141, 144, 685 P.2d 1293, 1296 (1984). If *Miranda* warnings are administered, the next requirement for admissibility is voluntariness. *Id.* In Arizona, confessions are·prima facie involuntary. *State v. Hensley*, 137 Ariz. 80, 87, 669 P.2d 58, 65 (1983). The burden is on the state to prove by a preponderance of the evidence that a defendant's confession or statements were given freely and voluntarily. *State v. Hein*, 138 Ariz. 360, 365, 674 P.2d 1358, 1363 (1983); *State v. Alvarado*, 121 Ariz. 485, 488, 591 P.2d 973, 976 (1979). Absent a showing of clear and manifest error, a trial court's determination of voluntariness will not be upset on review. *State v. Winegar*, 147 Ariz. 440, 444, 711 P.2d 579, 583 (1985).

■ The trial court must look to the totality of the circumstances in evaluating the voluntariness of a confession, or in this case, defendant's statements. *State v. Graham*, 135 Ariz. 209, 211, 660 P.2d 460, 462 (1983). After examining the circumstances surrounding defendant's statements, we find sufficient evidence to establish that defendant was in fact advised of his *Miranda* rights and his statements were voluntary. Defendant argues the foundation was deficient because Detective Kraemer did not read the *Miranda* rights from his card into the record at the voluntariness hearing. While this may be the preferred method of establishing what is actually stated to a person, we do not believe it is the exclusive manner for establishing such a foundation. We hold defendant received proper *Miranda* warnings and affirm the trial court's finding that the statements he made to Detective Kraemer were voluntary.

## II. Double Punishment/Double Jeopardy

■ Defendant contends that the trial court erred in sentencing him to a term of life imprisonment on Count I and ordering the sentences for Counts II, III and IV to run concurrently with each other, but consecutively to Count I. The thrust of defendant's argument is that his sentence violates A.R.S. § 13–116, which provides:

"**§ 13–116. Double punishment**

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require."

Defendant's argument fails for several reasons. Initially, defendant was charged with and convicted of four counts of the same offense: sexual assault, class 2, dangerous felonies. The offenses were committed while he was on parole for sexual battery from the state of Florida. The double punishment statute bars consecutive sentences for a single act which is made punishable in different ways. *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983). However, defendant was convicted and sentenced for four separate and distinct acts of sexual assault. He is not being punished "for a single continuous act of sexual assault committed several different ways" as he asserts. *See, e.g., State v. Hill*, 104 Ariz. 238, 450 P.2d 696 (1969); *State v. Bruni*, 129 Ariz. 312, 630 P.2d 1044 (App.1981).

The statutory restriction precludes consecutive sentences if, after eliminating the elements of one charge, the remaining evidence will not support the elements of the additional charge. This is termed the "identical elements" test. *State v. Rogowski*, 130 Ariz. 99, 101, 634 P.2d 387, 389 (1981); *State v. Gordon*, 125 Ariz. 425, 428, 610 P.2d 59, 62 (1980). This test focuses upon the evidence actually presented at trial, to establish that each punishment

could have related to a different act. *State v. Verive*, 128 Ariz. 570, 579, 627 P.2d 721, 730 (App.1981). The fact that the punishable acts occur within a very short time span is not material to the application of the test. *Id.; State v. Tinghitella*, 108 Ariz. 1, 3–4, 491 P.2d 834, 836–837 (1971). In order to apply this test a determination must be made of what elements have to be proven by the state in order to satisfy each charge and whether each charge can be supported if the elements of the other charges are eliminated.

Defendant was charged with four counts of sexual assault. A.R.S. § 13–1406(A) defines the crime as follows:

"A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person."

 Count I charged defendant with sexual assault by engaging in oral sexual contact (fellatio) with the victim by forcing her to place his penis in her mouth. Count II charged defendant with sexual assault by forcing the victim to put her tongue (licking) on his anus. Counts III and IV charged defendant with sexual assault by forcing the victim to engage in vaginal and then anal intercourse. Each felonious act was performed independent of the others and was completed prior to the beginning of the next act. Each act was performed in an entirely different manner and each was accompanied by the use of force and a lack of consent on the victim's part. It is irrelevant that the acts were committed within a relatively short time span. *State v. Tinghitella, supra; State v. Verive, supra*. We do not find a violation of A.R.S. § 13–116 and we do not find the charging instruments duplicitous. Consecutive sentences may be given for two crimes committed on the same occasion. *State v. Sanchez*, 130 Ariz. 295, 302, 635 P.2d 1217, 1224 (App.

1981). Where the imposition of consecutive sentences is permissible, as in this case, A.R.S. § 13–708 requires only that the trial court set forth in the record its reasons for doing so. *State v. Hallman, supra*. In imposing consecutive sentences, the trial court noted defendant's prior conviction for sexual battery in Florida, the use of a weapon in committing the offenses, his lack of remorse, the stress imposed upon his victim and the fact that he was on parole when he committed the offenses. We find the trial court in compliance.

 Finally, defendant asserts that the consecutive sentences imposed are barred by the double jeopardy [1] guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and Art. 2 § 10 of the Arizona Constitution. We find no merit in this argument and defendant's sentence does not violate the above provisions. The double jeopardy clause is said to consist of three constitutional protections. *State v. Tittle*, 147 Ariz. 339, 710 P.2d 449, 455 (1985); *State v. Rumsey*, 136 Ariz. 166, 168, 665 P.2d 48, 50 (1983). The defendant does not specify on which of the three protections his argument is focused, however the only possible contention would be that his sentence is unconstitutional as violative of multiple punishments for the same offense. We disagree based on our previous analysis. We have reviewed the entire record for fundamental error, A.R.S. § 13–4035. We have found none and affirm the judgment and sentence of the trial court.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

1. "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const., amend. V.