NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

KEVIN DUANE HAMLET, *Appellant.*

No. 1 CA-CR 23-0100

FILED 09-10-2024

---

Appeal from the Superior Court in Yavapai County
No. V1300CR202280266
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Zickerman Law Office, PLLC Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Michael J. Brown, and Chief Judge David B. Gass joined.

---

**J A C O B S**, Judge:

**¶1**        Kevin Duane Hamlet appeals under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), from convictions and sentences arising from the trafficking of stolen property and burglaries. Defense counsel identified no issues for appeal, though Hamlet filed a *pro per* supplemental brief.  We independently reviewed the case and record for arguable issues, but found none.  *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. 738; *State v. Clark*, 196 Ariz. 530, 537 ¶ 30.  We thus affirm.

### FACTS AND PROCEDURAL HISTORY

### A.        Hamlet's Employment and the Burglaries

**¶2**        Hamlet worked as an overnight security guard for Weiser Security and was assigned to patrol the Sedona Summit Resort.  Sedona Summit outsourced its overnight security work to Weiser Security. Hamlet's last shift of work at Sedona Summit was in the early morning hours of April 6, 2022.

**¶3**        On April 6, 2022, an employee arrived at work to open the sales office of Sedona Summit and found pieces of a broken cylinder lock and iPads missing from a cabinet.  The iPads missing were older legacy iPads that had the name Diamond Resort etched on the back, which was Sedona Summit's name before it was acquired by Hilton Grand Vacations. Another iPad not in the cabinet was discovered missing later in the day.

**¶4**        On April 7, 2022, another employee discovered his tool bag was missing and soon thereafter found other tools were missing, including a Ryobi impact wrench, Milwaukee drills, and a plumb tool.  On April 10, 2022, an employee discovered eleven new iPads that belonged to Hilton were also missing from the sales office.  These iPads had been stored in a black cabinet that looked like it had been pried open.  Surveillance footage from the early morning of April 10, 2022 revealed four persons in the sales office entering the office that held these iPads.  About a month after

Hamlet's subsequent arrest, Sedona Summit employees also saw that a projector was missing from its workspace.

### B. Hamlet's Arrest and the State's Charges

¶5         On May 5, 2022, after his supervisor encouraged him to do so, Hamlet called the Sedona Police Department and asked to speak with the investigating detective.   Hamlet asked to meet with the detective in Phoenix.   On May 6, 2022, two detectives met Hamlet at a Phoenix park. During the meeting, Hamlet suggested he was not involved in the burglaries, ultimately offering his phone to one detective to explain his narrative.   Hamlet explained that he gave his uniform and key fob to Jason Holzhausen, thus allowing Holzhausen access to Sedona Summit's work space.

¶6         Sedona police arrested Hamlet, after which Detective Evangelista seized Hamlet's phone and obtained a search warrant for its contents.   Hamlet and Holzhausen had texted around April 8, 2022, about a potential meeting and that they were "loaded up and ready to go and . . . waiting."   However, later texts that night showed Holzhausen could not make it because it was too late.   On April 24, 2022 and thereafter, Hamlet and Holzhausen discussed via texts "get[ting] rid of" and selling iPads.

¶7         The State charged Hamlet with three counts of trafficking in stolen property, and three counts of burglary at Sedona Summit Hilton Grand Vacations.   Count 1 charged Hamlet with trafficking in stolen property in the first degree (a microphone, Samsung computer accessories, and two projectors) on April 6, 2022, which was reduced at trial to refer only to one projector.   Count 2 charged Hamlet with trafficking in stolen property in the first degree (a cordless drill, plumb tool, and impact wrench) on April 16, 2022.   Count 3 charged Hamlet with trafficking in stolen property in the first degree (iPads) on April 28, 2022, which, by Day 3 of the trial, was amended to one iPad.   Count 4, 5, and 6 charged Hamlet with burglary in the third degree in connection with each of those items of stolen property.   Hamlet pled not guilty.

### C. Hamlet's Trial and Sentencing

¶8         On January 24, 2023, the superior court conducted voir dire for Hamlet's trial.   Juror 10 stated in a questionnaire response that they would believe the testimony of a law enforcement officer over a civilian based on their status.   However, Juror 10 also affirmed they could judge each person's testimony by the same standard.   Defense counsel did not

object to any of the fourteen jurors empaneled and sworn, including Juror 10.

¶9       At trial, the State presented evidence of the following facts. David Luckey testified that he met with Hamlet and bought an iPad from him sometime between April 5 and April 7, 2022.  Luckey testified he met Hamlet at a Circle K near the Green Tree Inn.  Gilbert Lanier, Sedona Summit's IT Manager, explained he was tasked with "pinging" the missing iPads to see if he could track them down.  Lanier testified the iPad Luckey bought from Hamlet was last detected "somewhere on Highway 89" near a Green Tree Inn between April 7 and 10, 2022.  When Luckey turned in the iPad to Sedona police, the back of the iPad showed it was the property of Diamond Resorts.

¶10      Mark Saldarini, the Assistant Chief Engineer, testified that on April 7, 2022, he arrived at work and noticed there were footprints on his chair and his tool bag was gone.  Saldarini learned from a Sedona Summit report that an emergency key opened his door after 10 p.m. on April 6, 2022.  Saldarini discovered various Ryobi and Milwaukee tools were missing from the maintenance shop.  Surveillance footage showed Hamlet going through a toolbox in the main shop and cabinets in the dark.

¶11      Tashina Kerley, an employee of Pawn1st in Phoenix, testified that on April 16, 2022, Hamlet borrowed money using three items as collateral, "a cordless drill with battery and charger, a plumb tool . . . and another driver, wrench pair of tools."  Kerley testified Sedona police picked up these tools.  Matthew Demars-Rote, manager of Super Pawn, testified he reviewed a transaction on April 6, 2022, at a store in Flagstaff which involved a BIGASUO brand projector sold by Hamlet.

¶12      Christee Peaslee, an employee for a third-party company doing business with Sedona Summit, testified she bought a DVD player/projector to be used for certain activities.  Peaslee testified that she went to find the projector near Memorial Day but was unable to and reported it missing.  Peaslee testified that the BIGASUO projector picked up by Sedona police looked "exactly like the projector that we had." Peaslee also testified the projector she bought was unusual because it had a DVD player and Bluetooth connectivity.

¶13      On January 26, 2023, the court held a voluntariness hearing as to whether admitting Hamlet's statements in the public park to Sedona police would violate *Miranda v. Arizona*, 384 U.S. 436 (1966).  The court held the statements admissible because Hamlet was not in custody.  The court

reasoned that police interviewed Hamlet in a public setting and that Hamlet initiated the interview. Further, the police did not coerce Hamlet because he could move around, the officers "stayed back from him," and the setting was public. Thus, Hamlet's statements were voluntary.

**¶14** Following a five-day trial, the jury deliberated for approximately four hours, and Hamlet was convicted of Counts 1, 2, 3, 5, and 6. As to Counts 1, 2, and 3, the jury unanimously found Hamlet guilty of the lesser offense of trafficking in stolen property in the second degree. As to Count 4, the jury found Hamlet not guilty of burglary in the third degree. As to Counts 5 and 6, the jury found Hamlet guilty of burglary in the third degree.

**¶15** There was no aggravation phase during the trial, so the jury did not find any aggravating factors. However, Hamlet testified about his prior felony convictions, which the court found sufficient to justify a finding of aggravation. The court found no mitigation in this case but found three aggravating factors. First, Hamlet committed the offenses for pecuniary gain. Second, Hamlet had prior felony convictions. Third, Hamlet was in a position of trust under A.R.S. § 13-701(D)(27).

**¶16** The court entered judgment on the verdicts and sentenced Hamlet to maximum concurrent prison terms of 7 years for Count 1, Count 2 and Count 3, with credit for 297 days of presentence incarceration. The court sentenced Hamlet to maximum concurrent prison terms of 3 years for Count 5 and 6, to run consecutively after Count 1. Hamlet timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

## DISCUSSION

**¶17** We find no reversible error. The record shows Hamlet was furnished with counsel at all stages, and when Hamlet represented himself (which was only during the pretrial stage), he did so knowingly, intelligently, and voluntarily. Further, the record shows Hamlet was afforded all constitutional and statutory rights and that the proceedings were conducted in accordance with the applicable procedural rules.

**¶18** We first review Juror 10's equivocal responses to the court's jury questionnaire. Rule 18.4(b) of the Arizona Rules of Criminal Procedure governs challenges for cause and requires the court to decide whether "there is a reasonable ground to believe . . . the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). The court conducted voir dire consistent with Rule 18.4, striking some jurors for cause and removing

others for hardship. Defense counsel had the chance to question or to move to strike Juror 10 for cause, but did not do so. Regardless, we do not see a reasonable ground to believe Juror 10 could not have rendered a fair verdict. The testimony of law enforcement at trial was far from the only testimony presented to the jury. Witnesses ranging from employees at Sedona Summit to employees of different pawn shops gave testimony helping to prove Hamlet's offenses. Moreover, even though Juror 10 said they would believe the testimony of law enforcement over a lay witness, Juror 10 also said they could judge the testimony of each witness by the same standard and agreed to follow the court's instructions. *State v. Riley*, 248 Ariz. 154, 175 ¶ 55 (2020) (a juror's affirmative answer in her questionnaire that a law enforcement officer is more believable than a lay witness was "not evidence of bias" but instead "an expression of potential or presumed bias."). *See State v. Hoskins*, 199 Ariz. 127, 141 ¶ 48 (2000) ("Prejudice will not be presumed but must appear affirmatively from the record."). We see no error.

¶19 Next, we review the verdicts and find they are supported by substantial evidence. For the trafficking in stolen property in the first degree charged in Count 1, the State had to prove that on or about April 6, 2022, Hamlet knowingly initiated, organized, planned, financed, directed, managed, or supervised the theft of a projector that belonged to Christy Peaslee and trafficked it. A.R.S. §§ 13-2301, 13-2307(B), 13-701, 13-702, and 13-801. The jury found Hamlet guilty of trafficking in stolen property in the second degree which simply required the State show Hamlet recklessly trafficked in the property of another that had been stolen. Evidence showed Hamlet pawned an identical projector on April 6, 2022, at Cash America Pawn in Flagstaff. While there were no serial numbers on the projector to compare, Christy Peaslee testified to the distinctiveness of the projector, including its brand name and that it was equipped with Bluetooth capability and a DVD player.

¶20 For the trafficking in stolen property in the first degree charged in Count 2, the State had to prove that on or about April 16, 2022, Hamlet knowingly initiated, organized, planned, financed, directed, managed, or supervised the theft of Ryobi power tools that belonged to Sedona Summit Hilton Grand Vacations and trafficked in them. A.R.S. §§ 13-2301, 13-2307(B), 13-701, 13-702, and 13-801. As with Count 1, the jury found Hamlet guilty of the lesser included offense trafficking in stolen property in the second degree. Evidence showed that on April 16, 2022, Hamlet pawned multiple Ryobi tools at Pawn1st in Phoenix. Testimony showed the Ryobi tools confiscated were the same type of tools that went missing around April 6, 2022.

¶21　　　　For the trafficking in stolen property in the first degree charged in Count 3, the State had to prove that on or about April 7, 2022, Hamlet knowingly initiated, organized, planned, financed, directed, managed, or supervised the theft of an iPad purchased by David Luckey that belonged to Sedona Summit Hilton Grand Vacations and trafficked it. A.R.S. §§ 13-2301, 13-2307(B), 13-701, 13-702, and 13-801. Again, as with Counts 1 and 2, the jury found Hamlet guilty of the lesser included offense trafficking in stolen property in the second degree. Testimony showed the older legacy iPads were discovered missing the morning of April 6, 2022, and another older legacy iPad was discovered missing that afternoon. Further, David Luckey testified that he bought an iPad from Hamlet on or around April 7, 2022. Luckey's testimony also revealed the transaction occurred at a Circle K near the Green Tree Inn, which was the last location at which the iPad was detected. Testimony showed the iPad Luckey bought from Hamlet had the name Diamond Resorts on the back, which matched the descriptions of the older legacy iPads that went missing on April 6, 2022.

¶22　　　　For the burglary in the third degree charged in Count 5, the State had to prove that on or about April 6, 2022, Hamlet entered or remained unlawfully in the non-residential structure of Sedona Summit Maintenance Supervisor's Office of Mark Saldarini with the intent to commit any theft therein. A.R.S. §§ 13-1506(A)(1), 13-301, 13-302, 13-303, 13-304, 13-701, 13-702, and 13-801. Evidence showed Hamlet was in the maintenance shop going through lockers and cabinets, at one point in the dark with a flashlight. Witnesses also testified someone entered that office on April 6, 2022, after 10:00 pm by using an emergency key. And Hamlet eventually pawned the same type of tools that were missing from the shop.

¶23　　　　For the burglary in the third degree charged in Count 6, the State had to prove that on or about April 10, 2022, Hamlet entered or remained unlawfully in the non-residential structure of the Sedona Summit Sales Office with the intent to commit any theft therein. A.R.S. §§ 13-1506(A)(1), 13-301, 13-302, 13-303, 13-304, 13-701, 13-702, and 13-801. Evidence showed four persons entered the sales office and headed down the hallway to the offices that contained iPads. Further, texts between Hamlet and Holzhausen on April 8, 2022 showed that Holzhausen tried to meet up with Hamlet, but it was too late. Their later messages discussed iPads and disposing of three of them. Hamlet also texted Holzhausen about a potential sale of an iPad. Lastly, Hamlet admitted giving his uniform and key fob to Holzhausen.

¶24　　　　The court entered lawful sentences on all counts. Counts 1, 2 and 3 were class 3 felonies under A.R.S. § 13-2307(C). The sentencing range

for a class 3 felony is a minimum of two-and-one-half years imprisonment and a maximum of seven years imprisonment. A.R.S. § 13-702(D). Here, the court issued sentences of seven years to be served concurrently, which fell within the statutory range. Counts 5 and 6 were class 4 felonies under A.R.S. § 13-1506. The sentencing range for a class 4 felony is a minimum of one-and-one-half years imprisonment and a maximum of three years imprisonment. A.R.S. § 13-702(D). Here, the court issued sentences of three years, to be served running consecutive to Count 1, which fell within the statutory range. The court also properly credited Hamlet's presentence incarceration under A.R.S. § 13-712(B).

**¶25**     There was no error in the court's decision to impose consecutive sentences. Where, as here, the superior court omits to state its reasons for imposing consecutive sentences, we are required to suspend the "appeal and revest jurisdiction in the trial court for the limited purpose of satisfying § 13-711(A)'s requirement that the court 'state on the record the reason for its determination.'" *State v. Perez-Gutierrez*, ___ Ariz., ___, ___, ¶ 28, 548 P.3d 1102, 1109 (2024). We did so here, and the court explained that a consecutive sentence was warranted as to Counts 5 and 6 because "the trafficking counts take the burglary counts one step further." We see no error, because trafficking and burglary are distinct offenses arising from distinct acts. *State v. Griffin*, 148 Ariz. 82, 86 (1986) (affirming the court's decision to impose consecutive sentences on the basis that each sentence was for separate, independent acts). And while we allowed Hamlet to file supplemental briefing to identify any error in the imposition of consecutive sentences on him, he filed no brief and points to none.

**¶26**     There was no error concerning aggravation. The court may impose a maximum prison term if one or more statutory aggravating circumstances are found by the trier of fact beyond a reasonable doubt or admitted by the defendant, except an alleged prior felony conviction under A.R.S. § 13-701(D)(11) shall be found by the court. A.R.S. § 13-701(C). While there was no aggravation phase due to the parties' agreement, a "judge, instead of the jury, [may] find a prior conviction to aggravate the sentence." *State v. Allen*, 248 Ariz. 352, 368 ¶ 65 (2020). Here, the court properly found one aggravating factor under A.R.S. § 13-701(D)(11) because Hamlet testified to seven prior convictions that occurred in other states.

**¶27**     Further, since the court was able to find one statutory aggravating factor regarding the prior felonies, it was able to find the other aggravating factors. *State v. Martinez*, 210 Ariz. 578, 585 ¶ 26 (2005) (stating "once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider

additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute.").

**¶28** We deny Hamlet's request for oral argument and his request that we order the State to answer his supplemental opening brief. While failure to reply to a supplemental brief may sometimes constitute a confession of error, the doctrine is discretionary, and we decline to apply it here, instead resolving this matter on the merits. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (1994). We deny Hamlet's motion to dismiss or vacate all charges with prejudice and immediate release of appellant. Further, we deny counsel's motion to withdraw as attorney of record but acknowledge defense counsel's obligations have come to an end unless counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Counsel must only inform Hamlet of the status of this appeal and his future options. *Id.* Hamlet has 30 days from the date of this decision to file a petition for review in propria persona. *See* Ariz. R. Crim. P. 31.21(b)(2)(A). On the court's own motion, Hamlet has 30 days from the date of this decision in which to file a motion for reconsideration. *See* Ariz. R. Crim. P. 31.20(c). A timely motion for reconsideration will extend the deadline to file a petition for review. *See* Ariz. R. Crim. P. 31.21(b)(2)(A).

## CONCLUSION

**¶29** We affirm Hamlet's convictions and sentence.

